PEOPLE v BLACKMON

Docket No. 277184. Submitted June 10, 2008, at Detroit. Decided August
    19, 2008, at 9:10 a.m. Leave to appeal sought.

    Roy Blackmon was convicted by a Wayne Circuit Court jury of second-
    degree murder, two counts of assault with intent to murder, and
    possession of a firearm during the commission of a felony. The Court
    of Appeals, HOEKSTRA, P.J., and TALBOT and KELLY, JJ., affirmed in an
    unpublished opinion per curiam, issued September 14, 2001 (Docket
    No. 219350), concluding that nonconstitutional error and prosecuto-
    rial misconduct regarding the admission of evidence indicating that
    the defendant was a gang member was harmless in view of the
    overwhelming and untainted evidence of the defendant's guilt. The
    Supreme Court denied leave to appeal. 467 Mich 851 (2002). The
    defendant petitioned for habeas corpus relief in the United States
    District Court for the Eastern District of Michigan. That court ruled
    that the erroneous admission of gang-membership evidence, and the
    prosecutorial misconduct related to that evidence, resulted in an
    unfair trial and a deprivation of the defendant's liberty without due
    process of law, in violation of his rights under the United States
    Constitution. *Blackmon v Booker*, 312 F Supp 2d 874 (ED Mich,
    2004). The United States Court of Appeals for the Sixth Circuit
    reversed and remanded. 394 F3d 399 (CA 6, 2004). On remand, the
    federal district court instructed the defendant to exhaust his state-
    court remedies for the federal-law violations. The defendant moved
    for relief from judgment in the Wayne Circuit Court. That court
    denied the motion. The Michigan Court of Appeals denied leave to
    appeal in an unpublished order, entered September 15, 2006 (Docket
    No. 268628). The Michigan Supreme Court, in lieu of granting leave
    to appeal, remanded the case to the Court of Appeals for consider-
    ation as on leave granted. 477 Mich 1125 (2007). The Supreme Court
    directed the Court of Appeals to consider (1) whether the error that
    occurred is constitutional in nature, (2) whether the Court of Ap-
    peals, on direct appeal, therefore erred in failing to apply the
    "harmless beyond a reasonable doubt" standard that is applied to
    preserved federal constitutional error, *Chapman v California*, 386
    US 18 (1967), (3) if so, whether the errors committed at trial were
    harmless beyond a reasonable doubt, (4) whether the defendant has
    shown good cause for failing to raise these issues on direct appeal, and

(5) if so, whether the defendant has shown actual prejudice and is therefore entitled to postappeal relief under MCR 6.508(D)(3).

The Court of Appeals *held*:

1. In order for prosecutorial misconduct to be constitutional error, the misconduct must have so infected the trial with unfairness as to make the conviction a deprivation of liberty without due process of law. All of the prosecutorial misconduct in this case, except for the misconduct involving improper argument to the jury concerning the defendant's gang membership, related to admission of evidence and was supported by the trial court's evidentiary rulings. The misconduct consisting of improper argument to the jury did not so infect the trial with unfairness as to make the conviction a deprivation of liberty without due process of law.

2. Because the prosecutorial misconduct was nonconstitutional in nature, the Court of Appeals, on direct appeal, was not required to apply the "harmless beyond a reasonable doubt" standard.

3. Absent constitutional error, the defendant's claim that he has shown good cause and actual prejudice under MCR 6.508(D)(3) must be rejected.

Affirmed.

WHITE, J., concurring, agreed with the conclusion that where a violation of a specific constitutional right is not at issue, the standard for determining whether there has been error of a constitutional magnitude in violation of the Due Process Clause is whether the error so infected the trial with unfairness as to make the resulting conviction a denial of due process. Judge WHITE stated that the erroneous introduction of gang evidence did not make the trial in this case so unfair as to make the conviction a denial of due process. That evidence did not result in the jury's attention being redirected away from the essential question of guilt based on the evidence to the question of guilt based on association, character, or other extraneous or prejudicial factors.

1. CRIMINAL LAW — EVIDENCE — APPEAL — CONSTITUTIONAL LAW.

Evidentiary errors are nonconstitutional in nature.

2. CRIMINAL LAW — PROSECUTORIAL MISCONDUCT — CONSTITUTIONAL LAW — DUE PROCESS OF LAW.

Prosecutorial misconduct, in order to be constitutional error, must so infect the trial with unfairness as to make the conviction a deprivation of liberty without due process of law.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, *Kym L. Worthy*, Prosecuting Attorney, and *Timothy A. Baughman*, Chief of Research, Training, and Appeals, for the people.

*Steven Fishman* for the defendant.

Before: MARKEY, P.J., and WHITE and WILDER, JJ.

WILDER, J. This case is before us on remand from the Michigan Supreme Court. *People v Blackmon*, 477 Mich 1125 (2007). This Court is instructed to decide

> (1) whether the error that occurred [at defendant's trial] is constitutional in nature; (2) whether the Court of Appeals, on direct appeal, therefore erred in failing to apply the "harmless beyond a reasonable doubt" standard that is applied to preserved federal constitutional error, *Chapman v California*, 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967) [overruled in part on other grounds, as recognized in *Sherley v Kentucky*, 889 SW2d 794 (Ky, 1994)]; (3) if so, whether the errors committed at trial were harmless beyond a reasonable doubt; (4) whether defendant has shown good cause for failing to raise these issues on direct appeal; and (5) if so, whether defendant has shown actual prejudice and is therefore entitled to postappeal relief under MCR 6.508(D)(3). [*Id.*]

We conclude that the claimed errors at defendant's trial were *non*constitutional in nature.

I

In April 1998, in the area of 14748 Woodmont Street in the city of Detroit, defendant shot to death one person (the murder victim, Kenneth Tinsley) and shot two other persons, who survived (Michael Hearn, who was shot twice, and Tiffiney Smith, a nine-year-old girl who was riding her bicycle at the time of the assaults).[1] All three

---

[1] Both of the assault victims must live the rest of their lives with bullets in their bodies.

victims were innocent bystanders. Defendant was 21 when he committed these felonies. The medical examiner, who autopsied Tinsley, found that Tinsley died from a single gunshot to his chest. The prosecutor charged defendant with first-degree premeditated murder,[2] two counts of assault with intent to murder, and one count of possession of a firearm during the commission of a felony.[3]

The prosecution argued that the crimes were gang-related and presented evidence that defendant was a member of the Schoolcraft Boys, a gang. Defendant denied that he was the shooter, presenting an alibi that he was at home at the time of the murder.

The prosecution argued that defendant's crimes were committed because he was coming to the aid of fellow gang member, Jimmy Crost. Crost had visited Keynyatta Simons's girlfriend, Nancy Ellis, who testified that Simons threatened to harm Crost and that Crost made a telephone call asking to be picked up because of some trouble. Hearn testified that defendant arrived, spoke to Crost, and then fired several shots, two of which hit Hearn as he stood near Simons.[4]

At trial, two eyewitnesses (Hearn and Arthur Anderson) testified that they saw defendant commit the crimes. This testimony tended to establish the identity of the murderer. Although the credibility of their testimony was challenged through impeachment, a jury of defendant's peers found him guilty of murder and the other charges. The trial court sentenced defendant to

---

[2] Later, the first count was amended to second-degree murder.

[3] The first three counts were also leveled against a codefendant, Jimmy Crost, a fellow gang member of defendant.

[4] This evidence suggests that defendant may have intended to shoot and murder Simons (for threatening to harm Crost), but instead hit the victims.

40 to 60 years' imprisonment for the second-degree murder conviction, 3 to 10 years' imprisonment for each assault conviction, and 2 years' imprisonment for the felony-firearm conviction.

Defendant appealed. This Court determined that, in light of the other testimony indicating that defendant was the murderer, the trial court abused its discretion in admitting the testimony about defendant's gang membership, because the unfairly prejudicial nature of the testimony substantially outweighed any probative value (even though it supported the prosecution's theory). *People v Blackmon*, unpublished opinion per curiam, issued September 14, 2001 (Docket No. 219350). This Court rejected the argument that the evidence concerning gang membership was relevant to show witness intimidation[5] and motive.

This Court also concluded that presentation of the testimony indicating defendant's membership in the Schoolcraft gang was prosecutorial misconduct. Notwithstanding its conclusions that the admission of gang-membership evidence and argument concerning that evidence was erroneous and prosecutorial misconduct, this Court concluded that the errors, which it called nonconstitutional, were harmless because the untainted evidence of defendant's guilt was overwhelming. Therefore, this Court affirmed the convictions and sentences.

Defendant filed an application for leave to appeal in the Supreme Court, arguing that this Court, after finding prosecutorial misconduct and evidentiary error, should have reversed the convictions. The Supreme Court denied leave to appeal. 467 Mich 851 (2002).

---

[5] It is undisputed that several witnesses were reluctant to testify against defendant.

Defendant sought habeas corpus relief in federal district court, arguing that the failure to reverse the convictions infringed federal constitutional rights. The federal district court agreed, concluding that the erroneous admission of gang-membership evidence, as well as that of the related prosecutorial misconduct, resulted in an unfair trial and a deprivation of defendant's liberty without due process of law. The federal court concluded that the untainted evidence of defendant's guilt was not overwhelming and held that defendant was entitled to be tried anew or released. *Blackmon v Booker,* 312 F Supp 2d 874 (ED Mich, 2004).

The United States Court of Appeals for the Sixth Circuit reversed the district court, determining that defendant had failed to present his federal constitutional claims to the state courts. *Blackmon v Booker,* 394 F3d 399, 400-401 (CA 6, 2004). On remand, the federal district court instructed defendant to exhaust his state-court remedies for the alleged federal-law violations.

In the circuit court, defendant filed a motion for relief from the judgment of conviction, presenting his federal claims that he was deprived of liberty without due process of law and arguing that the trial court's errors were constitutional in nature. The trial court denied the motion. This Court denied defendant's application for leave to appeal. *People v Blackmon,* unpublished order of the Court of Appeals, entered September 15, 2006 (Docket No. 268628).

The Supreme Court, in lieu of granting defendant's application for leave to appeal, remanded the case to this Court. *People v Blackmon,* 477 Mich 1066 (2007), vacated 477 Mich 1125 (2007). The prosecutor filed a motion for reconsideration or clarification of the Supreme Court's order, which the Supreme Court granted, vacating its earlier order and once again remanding the

case to this Court for consideration as on leave granted. 477 Mich 1125 (2007). We now again affirm.

II

The first issue concerns whether the errors that occurred at defendant's trial were constitutional in nature. Defendant argues that some of the errors were constitutional. We disagree.

Whether an error is constitutional in nature is an issue of law. We review issues of law de novo. *People v Kaslowski,* 239 Mich App 320, 323; 608 NW2d 539 (2000).

On direct appeal, this Court held that the following two errors occurred at trial: (1) erroneous admission of gang-affiliation testimony and (2) prosecutorial misconduct. Evidentiary errors are nonconstitutional. *People v Herndon,* 246 Mich App 371, 402 n 71; 633 NW2d 376 (2001). The key issue is whether prosecutorial misconduct is constitutional error. We hold that, in this case, it is not.

Some domestic decisions hold that prosecutorial misconduct is nonconstitutional error, even where the defendant alleges that the misconduct deprived the defendant of a fair trial and resulted in a deprivation of the defendant's liberty without due process of law, see *People v Jones,* 468 Mich 345, 354; 662 NW2d 376 (2003) (improper questioning by the prosecutor is nonconstitutional error); *People v Mezy,* 453 Mich 269, 285-286; 551 NW2d 389 (1996) (plurality opinion of WEAVER, J.) (applying the nonconstitutional harmless-error standard to review a claim of prosecutorial misconduct), while others hold that it constitutes constitutional error, *People v Abraham,* 256 Mich App 265, 272, 276; 662 NW2d 836 (2003) ("Generally, a claim of prosecutorial misconduct is a constitutional issue . . . ."), citing *People v Pfaffle,* 246 Mich App 282,

288; 632 NW2d 162 (2001); but cf. *People v Taylor*, 159 Mich App 468, 471; 406 NW2d 859 (1987) (holding that prosecutorial noncompliance with a discovery order is an error of nonconstitutional magnitude). Thus, domestic decisions do not settle this question. We must look to decisions from federal courts and the courts of other states.

Here, the prosecutorial misconduct consisted of (1) improper elicitation of gang-affiliation testimony, (2) improper argument to the jury concerning defendant's alleged gang affiliation, (3) improper impeachment by the prosecution of one of its own witnesses, Tiffany Goggans, and (4) improperly questioning defendant about the credibility of witnesses. Regarding the first two type of prosecutorial misconduct, defendant cites no authority suggesting that improper elicitation of gang-affiliation testimony, or improper argument to the jury concerning gang affiliation, is an error of constitutional magnitude. Neither do we find any such authority. Therefore, we reject defendant's argument.

Regarding the second two types of prosecutorial misconduct that the earlier panel of this Court found to have occurred, we conclude that these relate only to evidentiary matters. And evidentiary errors are nonconstitutional. *Herndon, supra* at 402 n 71. Therefore, we reject defendant's argument that the second two types of prosecutorial misconduct that occurred at trial were errors of a constitutional nature.

We find no authority for a general constitutional right to exclude gang-affiliation evidence. And none of the errors implicated a specific constitutional right— only the general right to be free from a deprivation of one's liberty without due process of law. (The instant case is not one where the prosecutor violated, for

instance, the Fifth Amendment right against self-incrimination by commenting on defendant's failure to testify, or one where the Sixth Amendment right to counsel was infringed.) The United States Supreme Court made this key distinction, between claims that the prosecutor violated a specific, enumerated constitutional right and claims of violation of the general due-process right to a fair trial. *Donnelly v DeChristoforo*, 416 US 637, 643; 94 S Ct 1868; 40 L Ed 2d 431 (1974). The former types of rights require that courts take special care to ensure that the prosecutor in no way infringes upon the specific constitutional right. *Id.* Although any error can potentially be argued to have deprived a defendant of his due-process fair-trial right, not every trial error is constitutional in nature. *People v Toma*, 462 Mich 281, 296; 613 NW2d 694 (2000) (not every trial error violates due process). Merely framing an issue as constitutional does not make it so. *People v Weathersby*, 204 Mich App 98, 113; 514 NW2d 493 (1994).

Defendant cites United States Supreme Court authority treating prosecutorial misconduct as federal constitutional error. See *Chapman v California*, 386 US 18-20, 25-26; 87 S Ct 824; 17 L Ed 2d 705 (1967) (the prosecutor's comments violated the defendant's Fifth Amendment right against self-incrimination),[6] over-

---

[6] It is not clear whether *Chapman* still would have held that the error was constitutional absent the involvement of the Fifth Amendment right against self-incrimination. Defendant also cites *Darden v Wainwright*, 477 US 168; 106 S Ct 2464; 91 L Ed 2d 144 (1986) (in evaluating a prosecutorial-misconduct claim, the Court asked whether the conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process; the Court did not indicate whether error was constitutional); *Donnelly, supra* at 640-645 (observing that the respondent's "claims of constitutional error" focused on remarks made by the prosecutor and holding that the errors did not render the respondent's trial so fundamentally unfair as to deny him due process); *Berger v United States*, 295 US 78; 55 S Ct 629; 79

ruled in part on other grounds, as recognized in *Sherley v Kentucky*, 889 SW2d 794 (Ky, 1994). But neither *Chapman* nor the other decisions cited by defendant definitively settle the question at issue here, because none of them stands for the proposition that any prosecutorial misconduct, by itself, is constitutional error. Once again, in *Chapman*, there was a specific constitutional right infringed, not the general constitutional right of due process. Accordingly, we conclude that the errors at issue here are nonconstitutional. *Toma, supra* at 296 (not every trial error violates due process). There is simply no general federal constitutional right to exclusion of gang-membership evidence.

In any event, defendant failed to preserve the errors as constitutional. Although defendant argued in his appellate brief on direct appeal that the prosecutorial misconduct violated his federal and state constitutional due-process rights to a fair trial, his reply brief expressly characterized the errors as nonconstitutional. Thus, defendant waived his argument that this Court should have treated the errors as constitutional. See *People v Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006).

Even if defendant had not waived his argument that the errors were constitutional in nature, we would conclude that they were not constitutional. Where there is no allegation that prosecutorial misconduct violated a specific constitutional right, a court must determine whether the error so infected the trial with unfairness as to make the resulting conviction a denial of due process of law. *Donnelly, supra* at 643.

---

L Ed 1314 (1935) (holding that a new trial was warranted where prejudice stemming from prosecutorial misconduct was highly probable; Court did not indicate whether error was constitutional). But none of these decisions holds that prosecutorial misconduct is always constitutional error.

In *Donnelly,* a jury of DeChristoforo's peers found him guilty of first-degree murder. DeChristoforo appealed to the Massachusetts Supreme Judicial Court, arguing, among other things, that certain remarks by the prosecutor during closing argument deprived him of his federal constitutional right to a fair trial. *Donnelly, supra* at 638. That court affirmed. It acknowledged that the prosecutor had made improper remarks, but determined that they were not so prejudicial as to require reversal. *Id.* DeChristoforo then sought habeas corpus relief in federal district court, which denied relief, concluding that the prosecutor's arguments were not so prejudicial as to deprive DeChristoforo of his right to a fair trial. The United States Court of Appeals for the First Circuit reversed. "The majority held that the prosecutor's remarks deliberately conveyed the false impression that respondent had unsuccessfully sought to plead to a lesser charge and that this conduct was a denial of due process." *Id.* at 639. The United States Supreme Court reversed the court of appeals, holding that the prosecutor's remarks, considered in the context of the entire trial, were not so prejudicial as to violate DeChristoforo's federal due-process rights. *Id.*

*Donnelly* does not state an explicit rule for determining when prosecutorial misconduct constitutes constitutional error and when it constitutes nonconstitutional error. But the Court did state:

> This is not a case in which the State has denied a defendant the benefit of a specific provision of the Bill of Rights, such as the right to counsel, *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), or in which the prosecutor's remarks so prejudiced a specific right, such as the privilege against compulsory self-incrimination, as to amount to a denial of that right. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). When specific guarantees of the Bill of

Rights are involved, this Court has taken special care to assure that prosecutorial conduct in no way impermissibly infringes them. But here the claim is only that a prosecutor's remark about respondent's expectations at trial by itself *so infected the trial with unfairness as to make the resulting conviction a denial of due process. [Donnelly, supra* at 643 (emphasis added).]

In *Darden v Wainwright*, 477 US 168; 106 S Ct 2464; 91 L Ed 2d 144 (1986), Darden was found guilty by a jury of his peers in Florida state court of murder and other crimes. Under Florida's capital-sentencing statute, the same jury heard further testimony and argument and made a nonbinding recommendation that the death penalty be imposed. The trial judge followed that recommendation, and the Florida Supreme Court affirmed the conviction and the sentence, rejecting the petitioner's contention that the prosecution's closing argument during the guilt phase of the trial rendered the trial fundamentally unfair and deprived the sentencing determination of the reliability required by the Eighth Amendment. "The prosecution's argument included improper remarks that indicated that petitioner was on weekend furlough from an earlier prison sentence when the crime involved here occurred; implied that the death penalty would be the only guarantee against a future similar act; referred to petitioner as an 'animal'; and reflected an emotional reaction to the case." *Id*. at 169.

Darden sought habeas corpus relief in federal district court, raising the same claim (and one other not relevant here). The district court denied relief, and the United States Court of Appeals for the Eleventh Circuit ultimately affirmed. Before the United States Supreme Court, Darden argued "that the prosecution's closing argument at the guilt-innocence stage of the trial rendered his conviction fundamentally unfair and deprived

the sentencing determination of the reliability that the
Eighth Amendment requires." *Darden, supra* at 178-
179. The Court sought to place the prosecutor's re-
marks in context:

> It is helpful as an initial matter to place these remarks
> in context. Closing argument came at the end of several
> days of trial. Because of a state procedural rule petitioner's
> counsel had the opportunity to present the initial summa-
> tion as well as a rebuttal to the prosecutors' closing
> arguments. The prosecutors' comments must be evaluated
> in light of the defense argument that preceded it, which
> blamed the Polk County Sheriff's Office for a lack of
> evidence, alluded to the death penalty, characterized the
> perpetrator of the crimes as an "animal," and contained
> counsel's personal opinion of the strength of the State's
> evidence. [*Id*. at 179.]

Next, *Darden* stated:

> The prosecutors then made their closing argument.
> That argument deserves the condemnation it has received
> from every court to review it, although no court has held
> that the argument rendered the trial unfair. Several com-
> ments attempted to place some of the blame for the crime
> on the Division of Corrections, because Darden was on
> weekend furlough from a prison sentence when the crime
> occurred. Some comments implied that the death penalty
> would be the only guarantee against a future similar act.
> Others incorporated the defense's use of the word "ani-
> mal." Prosecutor McDaniel made several offensive com-
> ments reflecting an emotional reaction to the case. These
> comments undoubtedly were improper. But as both the
> District Court and the original panel of the Court of
> Appeals (whose opinion on this issue still stands) recog-
> nized, it "is not enough that the prosecutors' remarks were
> undesirable or even universally condemned." *Darden v.
> Wainwright*, 699 F.2d. at 1036. *The relevant question is
> whether the prosecutors' comments "so infected the trial
> with unfairness as to make the resulting conviction a denial
> of due process." Donnelly v. DeChristoforo*, 416 U.S. 637, 94
> S.Ct. 1868, 40 L.Ed.2d 431 (1974). Moreover, *the appropri-*

*ate standard of review for such a claim on writ of habeas corpus is "the narrow one of due process,* and not the broad exercise of supervisory power." *Id.,* at 642, 94 S.Ct., at 1871. [*Id.* at 179-181 (emphasis added).]

The United States Supreme Court affirmed, holding that the prosecutor's improper closing argument did not deprive the defendant of his federal right to a fair trial. Thus, although *Darden* does not expressly make the distinction between prosecutorial misconduct that constitutes constitutional error and misconduct that constitutes nonconstitutional error, it can be read to provide that the former requires that the prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction a deprivation of liberty without due process of law. *Id.*

In *Burton v Renico,* 391 F3d 764, 780-781 (CA 6, 2004), Burton had been convicted of first-degree murder in a Michigan state court, and his conviction was affirmed by this Court. Burton petitioned for habeas corpus relief in federal district court. The district court denied relief. The United States Court of Appeals for the Sixth Circuit affirmed, holding that this Court's denial of Burton's claim that his Sixth Amendment rights were violated by the trial court's failure to grant his request for a continuance did not warrant habeas corpus relief. The court stated standards for determining whether prosecutorial misconduct causes a deprivation of liberty without due process of law:

> Burton's fifth procedurally defaulted claim is that the prosecutor engaged in misconduct by making statements undermining Burton's presumption of innocence. *Prosecutorial misconduct, in order to rise to the level of a constitutional due process violation, must be so severe that the defendant did not have a fair trial.* As we explained in *Bowling v. Parker,* for prosecutorial misconduct to rise to the level of a constitutional violation cognizable on habeas review:

*"the misconduct must have so infected the trial with unfairness as to make the resulting conviction a denial of due process. Even if the prosecutor's conduct was improper or even universally condemned, we can provide relief only if the statements were so flagrant as to render the entire trial fundamentally unfair.* Once we find that a statement is improper, four factors are considered in determining whether the impropriety is flagrant: (1) the likelihood that the remarks would mislead the jury or prejudice the accused, (2) whether the remarks were isolated or extensive, (3) whether the remarks were deliberately or accidentally presented to the jury, and (4) whether other evidence against the defendant was substantial."*

344 F.3d 487, 512-13 (6th Cir. 2003) (internal quotation marks and citations omitted). [*Id.* (emphasis added).]

Thus, in order to constitute or cause a deprivation of liberty without due process under the federal constitution, the prosecutorial misconduct must be "so flagrant as to render the entire trial fundamentally unfair." *Id.*

In *Marshall v Hendricks*, 307 F3d 36 (CA 3, 2002), Marshall was convicted in a New Jersey state court of hiring someone to murder his wife and was sentenced to death. After exhausting state-court appeals, he petitioned for habeas corpus relief in federal district court, asserting, among other claims, prosecutorial misconduct. The federal district court denied relief. The United States Court of Appeals for the Third Circuit held, in relevant part, that the prosecution's repeated, deliberate misconduct did not render the trial unfair, that the prosecutorial misconduct constituted harmless error, and that prosecutorial misconduct did not violate Marshall's right to call witnesses. The court stated:

Marshall urges that the New Jersey Supreme Court misapplied the United States Supreme Court's precedent in *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), by determining either that "no error"

occurred, or that any error that did occur was harmless. App. Br. at 134. In *Berger*, the United States Supreme Court condemned the prosecutor's argument as "undignified and intemperate, containing improper insinuations and assertions calculated to mislead the jury." *Id*. at 85, 55 S.Ct. 629. The Court then enunciated the often-cited standard by which prosecutors must abide:

"The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor-indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."

*Id*. at 88, 55 S.Ct. 629. But improper conduct is not, in itself, sufficient to constitute constitutional error, even when—as here—that conduct is alleged to be both deliberate and pervasive. Improper conduct only becomes constitutional error when the impact of the misconduct is to distract the trier of fact and thus raise doubts as to the fairness of the trial.[16]

---

[16] We note that we only conduct a harmless error inquiry once we decide that constitutional error did occur. Thus, *we first examine whether the misconduct so infected the trial as to render it unfair. See, e.g., Darden v. Wainwright*, 477 U.S. 168, 182 n. 15, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).

---

[*Id*. at 67 (emphasis added).]

State courts have also acknowledged that, to be constitutional error, prosecutorial misconduct must so

infect the trial with unfairness as to render the trial a deprivation of liberty without due process of law. *People v Ledesma*, 39 Cal 4th 641, 680; 140 P3d 657; 47 Cal Rptr 3d 326 (2006). *Ledesma* states:

> A prosecutor's conduct violates the Constitution only when it is so egregious that it *infects the trial with such unfairness as to make the conviction a denial of due process*. . . . Conduct that does not rise to the level of a constitutional violation will constitute prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury. [*Id.* at 680-681 (quotation marks and citations omitted; emphasis added).]

See also *People v Jablonski*, 37 Cal 4th 774, 835; 126 P3d 938; 38 Cal Rptr 3d 98 (2006).

Accordingly, in order for prosecutorial misconduct to be constitutional error, the misconduct must have *so infected the trial with unfairness as to make the conviction a deprivation of liberty without due process of law*. *Donnelly, supra* at 643. We conclude that none of the prosecutorial misconduct in this case infected the trial with such unfairness as to make the conviction a denial of due process. All of the prosecutorial misconduct, with the exception of the misconduct consisting of improper argument to the jury concerning defendant's alleged gang affiliation, related to admission of evidence, and such evidentiary errors were supported by specific evidentiary rulings by the trial court.[7] Although we are bound by the prior panel's conclusion that there was prosecutorial misconduct, we conclude that the eviden-

---

[7] We agree with the prosecutor that "[t]here is nothing improper about a prosecutor's reliance on a state court's evidentiary ruling, *whether or not the ruling itself was correct.*" *Frazier v Huffman*, 343 F3d 780, 792 (CA 6, 2003) (emphasis added).

tiary misconduct did not so infect the trial with unfairness as to deprive defendant of due process.

We also conclude that the misconduct consisting of improper argument to the jury did not so infect the trial with unfairness as to render the conviction a denial of due process. There was evidence that defendant was a member of the Schoolcraft gang and that these crimes (shooting of innocent bystanders) were committed because defendant was coming to the aid of fellow gang member Crost. Crost had visited Keynyatta Simons's girlfriend, Nancy Ellis, who testified that Simons threatened to harm Crost and that Crost made a telephone call asking to be picked up because of some trouble. Hearn testified that defendant arrived, spoke to Crost, and then fired several shots, two of which hit Hearn as he stood near Simons. This evidence suggests (and the jury evidently concluded) that defendant intended to shoot and murder Simons (for threatening to harm Crost), but instead hit the victims. Thus, there was evidence that defendant's crimes were gang-motivated, or at least gang-related. Accordingly, the prosecution's misconduct, consisting of improper argument to the jury regarding defendant's gang affiliation, did not rise to the level of a constitutional violation, because it did not so infect the trial with unfairness as to render the conviction a deprivation of liberty without due process of law.

Accordingly, this Court on direct appeal applied the proper standard of review—the preserved, nonconstitutional error standard. Under the preserved, nonconstitutional error standard, a defendant has the burden of establishing that it is more probable than not that the error in question "undermine[d] the reliability of the verdict," thereby making the error "outcome determinative." *People v Lukity,* 460 Mich 484, 495-496; 596 NW2d 607 (1999).

### III

Because the prosecutorial misconduct was nonconstitutional in nature, this Court was not required to apply the "harmless beyond a reasonable doubt" standard on direct appeal. Accordingly, this issue, which the Supreme Court directed us to consider, is moot. *Healing Place at North Oakland Med Ctr v Allstate Ins Co*, 277 Mich App 51, 61; 744 NW2d 174 (2007).

Next, defendant argues that he has shown good cause and actual prejudice under MCR 6.508(D)(3) for relief from the judgment. Because we find that there was no constitutional error, we reject defendant's arguments in this regard.

### IV

The prosecutorial misconduct that occurred in defendant's trial was nonconstitutional error. On direct appeal, this Court did not err in failing to apply the "harmless beyond a reasonable doubt" standard that is applied to preserved federal constitutional error.

Affirmed.

MARKEY, P.J., concurred.

WHITE, J. (*concurring*). I agree with Judge WILDER's legal conclusion that where the violation of a specific constitutional right is not at issue, the standard for determining whether there has been error of a constitutional magnitude in violation of the Due Process Clause is as stated in *Donnelly v DeChristoforo*, 416 US 637, 643; 94 S Ct 1868; 40 L Ed 2d 431 (1974), and *Darden v Wainwright*, 477 US 168; 106 S Ct 2464; 91 L Ed 2d 144 (1986)—"whether the error so infected the trial with unfairness as to make the resulting conviction a denial of due process."

A panel of this Court previously found both trial-court error in the admission of evidence and prosecutorial misconduct, but found that because the error did not undermine the reliability of the verdict, the error were harmless. This is a somewhat different inquiry from the question whether the error so infected the trial with unfairness as to make the resulting conviction a denial of due process.

Having read the transcript, I conclude that the error did not so infect the trial with unfairness as to make the resulting conviction a denial of due process. The trial was focused on the question whether defendant was guilty of the charged offenses, based on assessment of the credibility of the various witnesses. While the gang evidence was erroneously injected into the trial, my reading of the transcript leads me to conclude that the injection of this issue into the trial did not result in the jury's attention being redirected away from the essential question of guilt based on the evidence to the question of guilt based on association, character, or other extraneous or prejudicial factor. Having so concluded, I agree that the trial was not so unfair as to render the conviction a denial of due process and, thus, the error was not of constitutional magnitude.