# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAMES ELROY DENTON,

        Defendant-Appellant.

UNPUBLISHED
March 17, 2016

No. 325204
Isabella Circuit Court
LC No. 2014-001290-FC

Before: SERVITTO, P.J., and GADOLA and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of unlawful imprisonment, MCL 750.349b; fleeing and eluding a police officer (third degree), MCL 257.602a(3)(a); aggravated stalking, MCL 750.411i; operating while intoxicated, MCL 257.625(1)(a); and domestic violence, MCL 750.812. The trial court sentenced defendant, a habitual fourth offender, MCL 769.12, to concurrent terms of 19 to 40 years' imprisonment for the unlawful imprisonment conviction, and 13 to 40 years' for the fleeing and eluding and aggravated stalking convictions, and to 30 days of jail, with credit for time served, for the operating while intoxicated and domestic violence convictions. We affirm defendant's convictions but remand for resentencing in light of *Lockridge*.

Defendant and Robin Marshalek, his ex-girlfriend, were involved in a physical altercation on July 12, 2014, that began in a hotel room. The altercation eventually moved outside, with defendant hitting Marshalek, grabbing her in a headlock, and forcing her into his vehicle. A police officer saw defendant's vehicle stop and Marshalek exited the vehicle, yelling at the officer to get defendant because he was beating her. Defendant then accelerated quickly and the police officer, as well as two others, pursued defendant in his vehicle until he crashed. Upon speaking to defendant at the crash scene, defendant admitted to one of the officers that he had been drinking alcohol, but denied hitting Marshalek.

On appeal, defendant first contends that the prosecutor engaged in misconduct by shifting the burden of proof during his questioning of defendant and during closing argument and by disparaging defense counsel during closing arguments. "[P]reserved allegations of prosecutorial misconduct are reviewed de novo to determine whether the defendant was denied a fair and impartial trial." *People v Atkins*, 259 Mich App 545, 562; 675 NW2d 863 (2003). "Under the preserved, nonconstitutional error standard, a defendant has the burden of establishing that it is

more probable than not that the error in question 'undermine[d] the reliability of the verdict,' thereby making the error 'outcome determinative.' " *People v Blackmon*, 280 Mich App 253, 270; 761 NW2d 172 (2008), quoting *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999)(alteration by *Blackmon* Court). "[I]n order for prosecutorial misconduct to be constitutional error, the misconduct must have so infected the trial with unfairness as to make the conviction a deprivation of liberty without due process of law." *Id.* at 269.

"Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007). "A prosecutor's remarks must be examined in context and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial to determine whether a defendant was denied a fair and impartial trial." *People v Brown*, 267 Mich App 141, 152; 703 NW2d 230 (2005). "A prosecutor may argue from the facts that a witness, including the defendant, is not worthy of belief, and is not required to state inferences and conclusions in the blandest possible terms." *People v Launsburry*, 217 Mich App 358, 361; 551 NW2d 460 (1996) (citation omitted). However, "the prosecution may never shift its burden to prove that defendant is guilty beyond a reasonable doubt and obligate the defendant to prove his innocence." *People v Rosales*, 160 Mich App 304, 312; 408 NW2d 140 (1987). But, as explained by the Michigan Supreme Court in *People v Fields*, 450 Mich 94, 115; 538 NW2d 356 (1995):

> [W]here a defendant testifies at trial or advances, either explicitly or implicitly, an alternate theory of the case that, if true, would exonerate the defendant, comment on the validity of the alternate theory cannot be said to shift the burden of proving innocence to the defendant. Although a defendant has no burden to produce any evidence, once the defendant advances evidence or a theory, argument on the inferences created does not shift the burden of proof.

In this case, defendant argues that the prosecutor improperly shifted the burden of proof by suggesting, during cross-examination and rebuttal argument, it was significant that defendant was disclosing for the first time at trial that he observed bruises on Marshalek's legs before the offenses occurred. Yet, the issue of when and how Marshalek obtained the bruises on her legs pertained to the charge of assault with intent to commit criminal sexual misconduct—of which defendant was acquitted. Therefore, even if the prosecutor's question and comments were improper, they were not outcome determinative. *Blackmon*, 280 Mich App at 270.

In any event, it was not improper for the prosecutor to comment on defendant's theory of the source of Marshalek's bruises. When read in context, the prosecutor's question and comments did not suggest that defendant had the burden to prove his innocence. Rather, he was arguing that there were credibility implications to defendant sharing his observations of the bruises for the first time at trial. "[A] prosecutor may argue from the evidence that a witness is unworthy of belief." *People v Reid*, 233 Mich App 457, 478; 592 NW2d 767 (1999).

In addition, after defendant's objection to the prosecutor's comments during rebuttal argument, the trial court responded, "[T]he defense has no obligation to do anything." The trial court also instructed the jury that plaintiff bore the burden of proving every element of the crimes beyond a reasonable doubt, that it could only consider properly admitted evidence when reaching

a verdict, and that a lawyer's statements and arguments were not evidence. Thus, to the extent the prosecutor's remarks implied that defendant had the burden to prove his innocence, the trial court's instructions cured any prejudicial effect. *Brown*, 267 Mich App at 153. See also *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998) ("It is well established that jurors are presumed to follow their instructions.").

Defendant also argues that comments made by the prosecutor during closing argument improperly suggest that defense counsel was intentionally misleading the jury. "Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). "But the prosecutor may not suggest that defense counsel is intentionally attempting to mislead the jury." *People v Fyda*, 288 Mich App 446, 461; 793 NW2d 712 (2010). The danger of such a suggestion was explained by this Court in *People v Wise*, 134 Mich App 82, 102; 351 NW2d 255 (1984):

> When the prosecutor argues that the defense counsel himself is intentionally trying to mislead the jury, he is in effect stating that defense counsel does not believe his own client. This argument undermines the defendant's presumption of innocence. Such an argument impermissibly shifts the focus from the evidence itself to the defense counsel's personality. [Citation omitted.]

In this case, the prosecutor commented on defense counsel's decision not to question Marshalek about defendant's tattoo:

> What's the one thing we don't hear? During the cross, think back now, think back to the testimony and the cross examination of Ms. Marshalek. Did you hear any questions of Ms. Marshalek about the bandages on the left hand? Did you hear any questions to Ms. Marshalek of tattoos being the matter that set her off, that made her go ballistic, as Mr. Denton says? Did you—why wouldn't you ask those questions of the person who supposedly is fabricating everything to get back at Mr. Denton? Because it didn't happen.
>
> Did he have the tattoo. Perhaps. But think about in your mind Mr. O'Neil, a trained lawyer, had the opportunity to ask Ms. Marshalek those questions and they were never asked. Why? So that when he, Mr. Denton, takes the stand, he can make any assertion that he wants and there is nobody to—
>
> \*\*\*
>
> That's what happened. It was never—she was never questioned about that. But that was the catalyst. That was the wick in the keg that set her off to cause all these problems. It didn't happen. Ms. Marshalek never knew of that tattoo. If it was there, she didn't know about it. Seems to me that that would be important information.

The import of the prosecutor's remarks was that defense counsel did not ask Marshalek about defendant's tattoo because he knew that the tattoo did not initiate the altercation, which in turn suggested that he did not believe defendant's version of the events. The prosecutor notes how defense counsel introduced the idea during Hick's testimony. The prosecutor refers to

defense counsel as a "trained lawyer," and notes that counsel did not pursue the matter with Marshalek, even though he had the opportunity to do so. "Why," the prosecutor wonders cryptically, were the questions never put to Marshalek. The unspoken implication is that defense counsel knew that Marshalek would reject the contention because it was not true. Moreover, because defendant had no obligation to prove his innocence, *Rosales*, 160 Mich App at 312, counsel had no obligation to ask Marshalek the questions suggested by the prosecutor. Accordingly, the prosecutor's comments suggested that defense counsel was intentionally misleading the jury, *Fyda*, 288 Mich App at 461, and undermined defendant's presumption of innocence, *Wise*, 134 Mich App at 102.

However, the prosecutor's comments cannot be said to have "so infected the trial with unfairness as to make the conviction a deprivation of liberty without due process of law." *Blackmon*, 280 Mich App at 269. The fact that the jury acquitted defendant of three charges and was hung on another strongly indicates that the jury's decisions were predicated on determining whether the prosecutor had met its burden to prove defendant's guilt beyond a reasonable doubt. Moreover, the trial court instructed the jury that the lawyers' statements and arguments were not evidence and that it should only accept statements by the lawyers that are supported by the evidence or common sense. "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions." *Unger*, 278 Mich App at 235 (citation omitted).

Defendant next argues on appeal that he was sentenced based on an incorrect guidelines range and is thus entitled to resentencing or, alternatively, that defense counsel was ineffective for failing to object to the scoring errors. "In an appeal claiming that the scoring of the sentencing guidelines was erroneous, the trial court's findings of fact are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hutchinson*, 308 Mich App 10, 12-13; 865 NW2d 44 (2014). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "The interpretation of the statutory sentencing guidelines and the legal questions presented by application of the guidelines are subject to review de novo." *People v Underwood*, 278 Mich App 334, 337; 750 NW2d 612 (2008). "[T]he standards of review traditionally applied to the trial court's scoring of the variables remain viable after [*People v*] *Lockridge* [498 Mich 358; 870 NW2d 502 (2015)]." *People v Steanhouse*, ___ Mich App ___ ; ___ NW2d ___ (issued October 22, 2015, Docket No. 318329); slip op at 19.

A defendant must "move in the trial court for a new trial or an evidentiary hearing to preserve the defendant's claim that his or her counsel was ineffective." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Defendant moved for a new trial but not on the ground that his counsel was ineffective. This Court's review of unpreserved claims of ineffective assistance of counsel is limited to mistakes apparent from the record. *Id.*

Defendant challenges the scoring of offense variables (OV) 2 and 10, which were scored at five points and ten points, respectively. Ten points are scored for OV 10 where "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status." MCL 777.40(1)(b). The prosecution concedes that OV 10 was improperly scored because defendant and Marshalek

were not living together or in a relationship at the time of the offense. See *People v Brantley*, 296 Mich App 546, 555; 823 NW2d 290 (2012) (holding that the trial court erroneously assessed 10 points for OV 10 where the defendant and the victim had stopped dating at least two months prior to the assault). The prosecution makes no argument for scoring OV 10 at all. Thus, OV 10 should have been scored at 0 points.

As to OV 2, five points are assessed when the "offender possessed or used a pistol, rifle, shotgun, or knife or other cutting or stabbing weapon." MCL 777.32(1)(d). It is undisputed that when defendant was arrested, a knife was found in his truck. Defendant, however, contends that OV 2 was improperly scored in his case because there was no evidence that the knife was possessed *as* a weapon. Rather, defendant testified at trial that he kept the hunting style knife in his vehicle as a cutting tool and for use as a screwdriver and pry bar. Defendant also points out that Marshalek testified that she did not see the knife on the night of the incident and that the jury acquitted him of the charge of carrying a concealed weapon. The prosecutor, on the other hand, contends that OV 2 was correctly scored at five points because the statute only requires that defendant possessed a knife, which he does not dispute.

When interpreting statutory provisions, the overriding goal is to discern and give effect to the Legislature's intent. *People v Flick*, 487 Mich 1, 10; 790 NW2d 295 (2010). The first step is to examine the words of the statute, and "if the statute is unambiguous on its face, the Legislature will be presumed to have intended the meaning expressed, and judicial construction is neither required nor permissible." *People v Likine*, 492 Mich 367, 387; 823 NW2d 50 (2012). "The words of a statute are the most reliable indicator of the Legislature's intent and should be interpreted according to their ordinary meaning and the context within which they are used in the statute." *People v Smith*, 496 Mich 133, 138; 852 NW2d 127 (2014).

The plain language of MCL 777.32(1)(d) appears unambiguous. Section 32 provides for scoring of points on mere possession of a listed item, as the disjunctive "or" signals an alternative to use of a weapon. The statute states that it addresses the "lethal potential" of the listed weaponry possessed or used, not the actual threat posed by the weapon as used in the given situation. OV 1, in contrast, addresses actual use of a weapon and aggravated use of the same, at that. Regardless, defendant directs this Court to *People v Ball*, 297 Mich App 121; 823 NW2d 150 (2012), wherein the defendant was scored 20 points for OV 1, applicable to the aggravated use of a weapon (MCL 777.31), and the "weapon" counted for this OV was heroin that the defendant delivered to a victim and upon which the victim overdosed. A panel of this Court, while agreeing that heroin met the statutory definition of a "harmful chemical substance" for purposes of OV 1, disagreed with the trial court's conclusion that the heroin was used as a weapon under the facts of the case. *Id*. at 124-125. This Court defined "weapon" and concluded that while under some circumstances heroin could be used as a weapon, such as if one forcibly injected heroin into an unwilling victim, those circumstances were not present in *Ball*. *Id*. at 125-126. Relying on *Ball*, defendant indicates that the issue for purposes of scoring OV 2, then, is whether defendant must have possessed the knife *as a weapon* in order for five points to be assessed under OV 2.

This Court's opinion in *People v Lange*, 251 Mich App 247; 650 NW2d 691 (2002), is instructive. In *Lange*, the Court held that a glass mug used to strike the victim over the head was a weapon under OV 1. *Id*. at 248, 257-258. The defendant argued, in part, that the meaning of a

weapon was ambiguous when read in context of other statutory provisions. *Id*. at 255. In response, the Court noted that the Legislature is presumed to be aware of how courts interpret terms and proceeded by observing how the Michigan Supreme Court defined "dangerous weapon" in *People v Vaines*, 310 Mich 500; 17 NW2d 729 (1945):

> Some weapons carry their dangerous character because so designed and are, when employed, per se, deadly, while other instrumentalities are not dangerous weapons unless turned to such purpose.

> Daggers, dirks, stilettos, metallic knuckles, slung-shots, pistols, and similar articles, designed for the purpose of bodily assault or defense, are generally recognized as dangerous weapons *per se.* *Other articles and instruments become dangerous weapons only when they are used or carried for use as weapons.* [*Lange*, 251 Mich App at 256, quoting *Vaines*, 310 Mich at 505-506 (emphasis added by *Lange* Court).]

Applying those holdings to this case, it is clear that a hunting knife, which has a "dangerous character because [it is] so designed," *Vaines*, 310 at 505, is a weapon per se and that no additional inquiry is needed into whether it was actually possessed or used *as a weapon* during the commission of the offense. Because OV 2 unequivocally addresses only lethal *potential*, the only relevant inquiries for purposes of scoring OV 2 in defendant's case are: (1) whether the challenged instrument qualifies as a pistol, rifle, shotgun, or knife or other cutting or stabbing weapon and (2) whether defendant possessed *or* used the same during the commission of the offense. The answer to both questions here is "yes." Therefore, the trial court did not err by assessing five points for OV 2.

"If a mistaken score affects the defendant's recommended minimum sentence range, [this Court] should remand for resentencing." *People v Portellos*, 298 Mich App 431, 452; 827 NW2d 725 (2012). If OV 10 is scored at zero points, in this case, then defendant's total OV score is 50 points. This keeps him on the same sentencing cell. MCL 777.64. Resentencing is thus not required.

Defendant claims that counsel was ineffective for failing to object to the scoring of OV's 2 and 10. "To prevail on a claim of ineffective assistance of counsel, a defendant must show: (1) that his attorney's performance was objectively unreasonable in light of prevailing professional norms; and (2) that he was prejudiced by the deficient performance." *People v Walker*, 497 Mich 894, 895; 855 NW2d 744 (2014). In order to demonstrate prejudice, "the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001).

As discussed above, the court did not err in assessing five points under OV 2. "A trial attorney need not register a meritless objection to act effectively." *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001). While defense counsel erred by failing to object to the incorrect scoring of OV 10, the corresponding reduction in defendant's total OV score would not have changed his minimum sentencing range under the guidelines. Therefore, defendant cannot

show that but for defense counsel's error the result of his sentencing would have been different. *Carbin*, 463 Mich at 599-600.

Finally, defendant contends that the trial court engaged in judicial fact-finding to assess points for OV's 2, 3, 4 and 10, which increased the permissible floor of his sentence in violation of *Alleyne v United States*, 133 S Ct 2151; 186 L Ed 2d 314 (2013). We review unpreserved issues for plain error affecting substantial rights. *Carines*, 460 Mich at 764-765. Reversal is only warranted when the plain error caused an innocent defendant to be convicted, or when the error "seriously affected the fairness, integrity, or public reputation of judicial proceedings[.]" *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004) (internal quotation marks and citation omitted).

In *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), the Michigan Supreme Court held that Michigan's sentencing guidelines violated a defendant's right to a jury trial "to the extent that OVs scored on the basis of facts not admitted by the defendant or necessarily found by the jury verdict increase the floor of the guidelines range, i.e., the defendant's 'mandatory minimum' sentence[.]" *Id*. at 373-374. The Court remedied the constitutional infirmity by making the sentencing guidelines advisory only and striking the statutory requirement that a sentencing court must give a substantial and compelling reason for departing from the guidelines range. *Id*. at 364-365.

As for defendants previously sentenced under the unconstitutional scheme, in cases where the facts admitted by the defendant or found by the jury "were sufficient to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced . . . the defendant suffered no prejudice . . . and no further inquiry is required." *Id*. at 394-395. In cases "where the facts admitted by the defendant or found by the jury were *insufficient* to assess the minimum number of OV points necessary for the defendant's score to fall in the cell of the sentencing grid under which he or she was sentenced . . . an unconstitutional constraint actually impaired the defendant's Sixth Amendment right." *Id*. at 395 (emphasis in original). In those cases, if the defendant's sentence was not subject to an upward departure, "the case should be remanded to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error." *Id*. at 397. "If the trial court determines that the answer to that question is yes, the court shall order resentencing." *Id*.

In this case, defendant's sentence was not subject to an upward departure. Thus, if the facts admitted by him or found by the jury were insufficient to assess 50 OV points, then he is entitled to a remand. *Lockridge*, 498 Mich at 395, 397; MCL 777.64. As previously indicated, defendant was assessed five points under OV 2 for possessing a knife during the offense. Defendant admitted that the knife found in the vehicle was his. Therefore, facts admitted by defendant were sufficient to assess five points for OV 2.

Defendant was assessed 10 points for OV 3, which addresses physical injury to a victim. Under this variable, 10 points may be assessed if "bodily injury requiring medical treatment occurred to a victim." While Marshalek testified that she received treatment at the hospital for her injuries, the jury did not have to find that fact to convict defendant of any charge. And

-7-

defendant was not questioned about Marshalek's treatment. For those reasons, the 10 points assessed for OV 3 derived from judicial fact-finding.

Similarly, it is clear that the 10 points assessed under OV 4, were scored on facts not found by the jury or admitted by defendant. OV 4 provides for an assessment of 10 points when "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). Not one of the charges the jury convicted defendant of required it to make such a finding. Nor was defendant questioned about Marshalek's psychological state. Finally, as discussed above, the trial court mistakenly scored OV 10 at 10 points.

Subtracting the 30 points assessed on the basis of judicial fact-finding from defendant's OV score results in a total OV score of 30 points, which results in a reduction of his minimum sentence range from 58 to 228 months to 43 to 172 months. MCL 777.64; MCL 777.21(3)(c). Because the facts found by the jury and admitted by defendant were insufficient to assess the minimum number of OV points necessary for defendant's score to fall in the cell of the sentencing grid under which he was sentenced, he is entitled to a remand to the trial court for further inquiry. *Lockridge*, 498 Mich at 395, 397.

We affirm defendant's convictions but remand for resentencing in light of *Lockridge*. We do not retain jurisdiction.

/s/ Deborah A. Servitto
/s/ Michael F. Gadola
/s/ Colleen A. O'Brien