*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 11, 2021

Plaintiff-Appellee,

v

No. 350304
Macomb Circuit Court
LC No. 2018-000271-FC

HAL BRIAN STICKNEY,

Defendant-Appellant.

Before: FORT HOOD, P.J., and GADOLA and LETICA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of three counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a), four counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) and (b), two counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(d), one count of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(a), and two counts of aggravated indecent exposure, MCL 750.335a(2)(b). The trial court sentenced defendant to concurrent prison terms of 25 to 42 years for each CSC-I conviction, 9 to 15 years for each CSC-II and CSC-III conviction, and one to two years for each CSC-IV and indecent exposure conviction. Defendant appeals as of right. We remand for the limited purpose of correcting defendant's judgment of sentence to indicate that Counts 6 and 7 were dismissed, and accordingly, vacate the convictions and sentences for the two counts of CSC-II associated with Counts 6 and 7. We affirm defendant's remaining convictions and sentences in all other respects.

Defendant was convicted of sexually assaulting his stepdaughter, MI, and her friend, VV, and exposing himself to the girls in the family residence in Shelby Township. The prosecution presented evidence that in April 2017, defendant made sexual contact with MI and VV, who were both teenagers, and masturbated in front of the girls during a sleepover.[1] After MI learned that defendant had also touched VV during the night, MI reported the incidents to her mother, who

---

[1] A third teenage girl witnessed defendant touching MI and VV's inner legs and heard each tell him to stop.

contacted the police. More than a year later, MI disclosed that defendant had sexually assaulted her "multiple times" beginning when she was seven or eight years old. At trial, the defense denied that defendant sexually assaulted MI or VV.

## I. ANONYMOUS JURY

Defendant argues that his right to due process was violated when the trial court used an anonymous jury, referring to the jurors by number rather than by name throughout voir dire and trial. We disagree.

To properly preserve an issue for appeal, a defendant must timely object in the trial court, even if the right asserted is constitutional in nature. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). As defendant acknowledges, he did not raise this issue in the trial court, leaving the issue unpreserved. Therefore, we review this unpreserved constitutional claim for plain error affecting defendant's substantial rights. *Id.* at 763-764.

A trial court's practice of referring to jurors by number instead of name potentially involves the use of an "anonymous jury," which this Court has defined as "one in which certain information is withheld from the parties, presumably for the safety of the jurors or to prevent harassment by the public." *People v Williams*, 241 Mich App 519, 522; 616 NW2d 710 (2000). The use of an anonymous jury implicates two interests: "(1) the defendant's interest in being able to conduct a meaningful examination of the jury and (2) the defendant's interest in maintaining the presumption of innocence." *Id*. at 522-523. An anonymous jury is "where something more than just the jurors' names is withheld from the parties" and is only actually implicated if certain biographical information is also withheld. *People v Hanks*, 276 Mich App 91, 93; 740 NW2d 530 (2007). Ultimately, "[a] challenge to an 'anonymous jury' will only succeed where the record reflects that withholding information precluded meaningful voir dire or that the defendant's presumption of innocence was compromised." *Id*.

In this case, the record does not support defendant's contention that an actual "anonymous jury" was used. At the outset of voir dire, the trial court informed the parties and the prospective jurors of its practice of referring to jurors in court by number rather than name. The court explained:

> What's going to happen now, folks, we're going to start voir dire. A couple of things initially. First of all, no disrespect intended. You will not be referred to by name in this court. You're only referred to by your seat number or juror number. Jurors in the past have asked not to have their name bantered about the courtroom. In order to do that, I have to do it in every case, civil and criminal. So again, no disrespect intended. That's how we're going to refer to you.

There is no indication that the parties did not have access to the jurors' names. During voir dire, the jurors shared biographical information in open court, which included their employment status, marital status, spouses' employment status, education level, whether they had children, and the ages of the children. Indeed, defendant does not identify any juror information that was withheld from the parties. Further, there is nothing in the record to indicate that the use of numbers when referring to jurors on the record undermined defendant's presumption of innocence. The

trial court advised the jurors that it was using this method in deference to requests from jurors in the past. Thus, there was no implication that this method was necessary to protect the jurors from defendant. Also, the trial court instructed the jury, before voir dire and again after closing arguments, that defendant was presumed innocent. In sum, the record does not show that any juror information was withheld from the parties or that the trial court's practice of referring to the jurors by numbers on the record, rather than names, undermined defendant's presumption of innocence or precluded meaningful voir dire. Defendant has not demonstrated a plain error.

## II. IMPROPER TESTIMONY

### A. PROSECUTOR'S CONDUCT

Defendant next argues that the prosecutor engaged in misconduct by intentionally eliciting improper testimony from a jailhouse informant about defendant's veracity and guilt.[2] We disagree.

"In order to preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Defendant objected to the witness's testimony, arguing that it was speculative, and the trial court sustained the objection. However, defendant did not argue that the prosecutor engaged in misconduct by eliciting the witness's response and did not request additional relief after the trial court sustained his objection. Therefore, defendant's claim of prosecutorial error is unpreserved. By failing to request additional relief, such as a curative instruction, after obtaining a favorable ruling on his objection, defendant failed to preserve his assertion that additional relief was warranted. *People v Sanders*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 349107); slip op at 7. We review unpreserved claims of prosecutorial error for plain error affecting defendant's substantial rights. *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014).

During trial, the witness testified that he and defendant were jail cellmates from late 2017 until early 2018. They discussed their current cases, and defendant said he was being accused of

---

[2] Defendant attempts to frame this issue as a claim of constitutional error implicating his due-process right to a fair trial. We do not view this alleged error as one of constitutional magnitude because defendant does not contend that the prosecutor violated a specific constitutional right beyond "the general right to be free from a deprivation of one's liberty without due process of law." *People v Blackmon*, 280 Mich App 253, 260-261; 761 NW2d 172 (2008). "Merely framing an issue as constitutional does not make it so." *Id*. at 261.

Additionally, "prosecutorial misconduct" has become a term of art used to describe any error committed by the prosecution. *People v Cooper*, 309 Mich App 74, 87; 867 NW2d 452 (2015). Claims of inadvertent error by the prosecution are "better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct[,]' " such as those actions that are fraudulent or that violate the Michigan Rules of Professional Conduct. *Id*. at 88. For that reason, we will refer to defendant's claim of "prosecutorial misconduct" as "prosecutorial error."

sexually assaulting his stepdaughter and her friends. Of relevance, the following exchange occurred during the prosecutor's questioning:

> *Q.* And at some point in time your conversation, or you felt uncomfortable with the way things were going?
>
> *A.* Yes.
>
> *Q. And what did you proceed to do?*
>
> *A.* He mentioned to one of the inmates, I overheard him saying that if you don't want people to jump on your case, which means snitch on you about your own case, you tell them what you want the police to know, and that way when they go to the police, it's called jumping on your case, when they go to the police, they are telling the police the story that you want the police to know, is what he said. And after that I started feeling real uneasy with what he was trying to say was his alibis and things and the reasons why he didn't do it. *Up until that point I believed that he was innocent, but then when he said that and I overheard it, I laid in bed that night and things just didn't add up, and I pulled out that folder and found a letter in there that I presumed he was forging.*
>
> [*Defense counsel*]: Objection, your Honor. The witness is testifying to speculation.
>
> *A.* Sustained. [Emphasis added.]

The record does not reflect that the prosecutor intentionally elicited the challenged testimony, as defendant claims. A witness cannot express an opinion on the defendant's guilt or innocence of the charged offense. *People v Heft*, 299 Mich App 69, 81; 829 NW2d 266 (2012). However, a prosecutor's good-faith effort to admit evidence does not constitute misconduct. *People v Dobek*, 274 Mich App 58, 72; 732 NW2d 546 (2007). The prosecutor's question did not invite the objectionable testimony. It is apparent that the prosecutor sought to elicit what steps the witness took as a result of his uneasiness. The witness volunteered the additional information that he was second-guessing defendant's claimed innocence and thought defendant forged a letter. The trial court sustained defense counsel's objection to the comment. The prosecutor did not seek to develop that opinion testimony and did not mention the objectionable testimony in her closing argument.

A witness's nonresponsive answer to a prosecutor's question does not constitute prosecutorial error unless the prosecutor knew, encouraged, or conspired with the witness to provide the unresponsive testimony. *People v Jackson (On Reconsideration)*, 313 Mich App 409, 427; 884 NW2d 297 (2015), citing *People v Hackney*, 183 Mich App 516, 531; 455 NW2d 358 (1990). Defendant does not explain why the record compels imputing such misconduct to the prosecutor when there is nothing to suggest that the prosecutor anticipated or encouraged the nonresponsive answer. Further, the challenged testimony was not so egregious that a curative instruction would have been unable to alleviate any resulting prejudice. See *People v Mahone*, 294 Mich App 208, 213; 816 NW2d 436 (2011) ("[U]nresponsive answers may work a certain amount of mischief with the jury, but they are generally not considered prejudicial errors unless

-4-

egregious or not amenable to a curative instruction.") (quotation marks and citation omitted). We will not find error requiring reversal when, as is the case here, a curative instruction could have alleviated any prejudicial effect. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008).

## B.  EFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that defense counsel was ineffective for failing to request a mistrial or a curative instruction after the witness's objectionable response. Because defendant failed to raise this ineffective-assistance claim in the trial court in a motion for a new trial or request for an evidentiary hearing, our review is limited to mistakes apparent from the record. *Heft*, 299 Mich App at 80. "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013) (citation omitted). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id.* "A defendant must meet a heavy burden to overcome the presumption that counsel employed effective trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

While the challenged testimony could be considered objectionable, defense counsel did object, and the trial court sustained the objection. Regarding defense counsel's failure to request a mistrial, "an unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial." *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995) (citations omitted). Again, the objectionable testimony was not intentionally elicited by the prosecutor's questioning. It was an unresponsive answer to a proper question, which is not grounds for a mistrial. Therefore, defense counsel's failure to move for a mistrial was not objectively unreasonable. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

While defense counsel might have requested a curative instruction following her successful objection to the testimony, the decision whether to do so is a matter of trial strategy. *People v Coddington*, 188 Mich App 584, 608; 470 NW2d 478 (1991). It can be valid strategy to forgo a curative instruction to avoid highlighting a matter, *id.*, and defendant has not overcome the presumption of sound strategy. Furthermore, the record does not support defendant's contention that a reasonable probability of a different outcome existed but for counsel's failure to request a cautionary instruction. Again, defense counsel objected to the testimony, and the trial court sustained the objection. Even though defense counsel did not request a curative instruction, the trial court instructed the jury in its initial and final instructions that it was not to consider any excluded evidence, it was to decide the case only on the basis of properly admitted evidence, and that it was to follow the court's instructions. The court's instructions were sufficient to dispel any possible prejudice. See *People v Long*, 246 Mich App 582, 588; 633 NW2d 843 (2001). Juries are presumed to have followed their instructions. *People v Breidenbach*, 489 Mich 1, 13; 798 NW2d 738 (2011). Defendant has not presented any basis for overcoming this presumption. Accordingly, defendant has not established a claim of ineffective assistance of counsel.

## III. EXPERT TESTIMONY

Defendant also argues that the trial court erred by allowing the prosecutor to elicit expert testimony about delayed reporting by child victims of sexual abuse. We disagree.

As defendant acknowledges, he did not object to the challenged testimony in the trial court. We therefore review this unpreserved claim for plain error affecting substantial rights. *Carines*, 460 Mich at 763.

At trial, the prosecution's expert, Nichole King, was qualified as an expert in her capacity "as a child interviewer and part of that process was disclosure being a component of the interview process." MRE 702 governs the admissibility of expert testimony and provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

MRE 702 requires "a court evaluating proposed expert testimony [to] ensure that the testimony (1) will assist the trier of fact to understand a fact in issue, (2) is provided by an expert qualified in the relevant field of knowledge, and (3) is based on reliable data, principles, and methodologies that are applied reliably to the facts of the case." *People v Kowalski*, 492 Mich 106, 120; 821 NW2d 14 (2012). This inquiry, however, is a flexible one and must be tied to the facts of the particular case; thus, the factors for determining reliability may be different depending upon the type of expert testimony offered, as well as the facts of the case. *Daubert v Merrell Dow Pharm, Inc*, 509 US 579, 591; 113 S Ct 2786; 125 L Ed 2d 469 (1993); *Kumho Tire Co, Ltd v Carmichael*, 526 US 137, 150; 119 S Ct 1167; 143 L Ed 2d 238 (1999). The trial court has an obligation "to ensure that any expert testimony admitted at trial is reliable." *Dobek*, 274 Mich App at 94 (quotation marks and citation omitted).

Preliminarily, defendant has not directed this Court to any Michigan case to support his claim that the trial court should have rejected expert testimony regarding the concept of delayed reporting. Indeed, our Supreme Court has repeatedly recognized the propriety of expert testimony to explain the phenomenon of "delayed reporting" in sexual assault cases involving young victims. See, e.g., *Kowalski*, 492 Mich at 123-124, *People v Peterson*, 450 Mich 349, 352-353; 537 NW2d 857 (1995), and *People v Beckley*, 434 Mich 691, 716-717; 456 NW2d 391 (1990). In *Peterson*, the Court held that "where there are common misperceptions regarding the behavior of the victim on which a jury may draw an incorrect inference, such as . . . delayed reporting, the prosecutor may present limited expert testimony dealing solely with the misperception." *Peterson*, 450 Mich at 379. "[T]he purpose of allowing expert testimony in these kinds of cases is to give the jury a framework of possible alternatives for the behaviors," and "to provide sufficient background information about each individual behavior at issue which will help the jury to dispel any popular misconception commonly associated with the demonstrated reaction." *Beckley*, 434 Mich at 726.

King testified generally about various concepts that could assist the jury with understanding the evidence and determining facts in issue. See MRE 702. Contrary to what defendant contends in his appellate brief, he used MI's delayed reporting as part of his defense strategy from the outset of trial. In opening statement, defense counsel stated: "I submit the delay in the reporting this alone is enough evidence or lack thereof to release Mr. Stickney at the end of these proceedings, and I would ask you to do that." It was not improper for King to generally "testify concerning whether particular conduct by the victim is consistent with having been abused to rebut an inference that the conduct is inconsistent with abuse." *People v Smith*, 205 Mich App 69, 73; 517 NW2d 255 (1994). While defendant characterizes King's testimony as involving an opinion on MI's credibility, King only testified in general terms about delayed reporting in child sexual assault cases, as she was allowed to do, and she did not offer an opinion whether MI was actually assaulted or credible. Further, King had the qualifications to provide testimony on this subject, which defendant does not appear to dispute. Accordingly, defendant has not demonstrated any error, let alone a plain error, in the admission of King's testimony.[3]

Defendant also argues that King's testimony should have been excluded under MRE 403. According to defendant, "[w]hen a jury is presented evidence of an alleged child victim's behaviors, paired with testimony that these behaviors are consistent with being sexually abused, and then told that it is common for children to delay reporting such abuse, the invited inference is obviously that the child was sexually abused." Defendant reasons that King's testimony was misleading because it invited an inference that MI's allegations were true. We disagree.

To begin with, defendant mischaracterizes King's testimony. She did not testify that certain behaviors are "consistent with being sexually abused." Rather, she testified that it is not uncommon for children who disclose allegations of sexual abuse to delay initial or complete disclosures and explained the reasons that often contribute to those delays. Under the circumstances involved in this case, King opined that there was nothing unusual about MI having come forward with additional allegations of earlier abuse after first disclosing defendant's conduct in April 2017. There is an important distinction between testimony suggesting that an ongoing disclosure process is not unusual and testimony suggesting that delayed disclosures are generally truthful. Defense counsel conveyed this distinction to the jury on cross-examination, during which King agreed that children sometimes lie and that a delayed disclosure could occur if the accuser was fabricating the allegations. King also clarified that her job as a forensic interviewer was limited to interviewing children; she did not measure "outcomes" in terms of which children were and were not found to be lying.

Under MRE 403, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or

---

[3] We again reject defendant's attempt to frame this issue as a claim of constitutional error. Evidentiary errors are not constitutional errors. *Blackmon*, 280 Mich App at 259. As the Sixth Circuit has observed, "the Supreme Court has never held (except *perhaps* within the capital sentencing context) that a state trial court's admission of *relevant* evidence, no matter how prejudicial, amounted to a violation of due process." *Blackmon v Booker*, 696 F3d 536, 551 (CA 6, 2012).

by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Defendant's position misconstrues the type of prejudice that is relevant to MRE 403. All relevant evidence offered by the prosecution is generally harmful to the defense and, thus, can be viewed as "prejudicial" to some extent. But MRE 403 is "concerned only with unfairly prejudicial evidence that may be given inappropriate weight by the jury or involve extraneous considerations." *People v Sharpe*, 502 Mich 313, 333; 918 NW2d 504 (2018). Stated differently, "[u]nfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008). Defendant essentially argues that King's testimony was unfairly prejudicial because the jury might rely on it for the exact purpose for which it was admitted—to help assess MI's credibility. This is not unfair prejudice for purposes of MRE 403, and the trial court did not err by failing to sua sponte exclude King's testimony under MRE 403.

## IV. JUDGMENT OF SENTENCE

In his last claim, defendant argues that remand is necessary to correct the judgment of sentence. Plaintiff concedes, and we agree, that remand is necessary for this purpose.

The felony information charged defendant with 14 counts. Counts 6 and 7 each charged defendant with CSC-II, but both counts were dismissed on the prosecutor's motion during trial. The jury verdict form lists Counts 6 and 7 as dismissed, so the jury did not return a verdict on either count. However, defendant's judgment of sentence incorrectly indicates that he was convicted of Counts 6 and 7 and sentenced to 9 to 15 years' imprisonment for each conviction. Accordingly, we remand this case to the trial court for the limited purpose of correcting the judgment of sentence to accurately reflect the disposition of Counts 6 and 7. MCR 6.435(A).

In sum, we remand for the limited purpose of correcting defendant's judgment of sentence to indicate that Counts 6 and 7 were dismissed, and accordingly, vacate the convictions and sentences for the two counts of CSC-II associated with Counts 6 and 7, but affirm defendant's remaining convictions and sentences in all other respects. We do not retain jurisdiction.

/s/ Karen M. Fort Hood
/s/ Michael F. Gadola
/s/ Anica Letica