*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARQUISSE DAVON PARKS,

Defendant-Appellant.

UNPUBLISHED
August 19, 2021

No. 349362; 350305
Kent Circuit Court
LC No. 18-004022-FC

Before: STEPHENS, P.J., and BECKERING and O'BRIEN, JJ.

PER CURIAM.

Defendant, Marquisse Davon Parks, appeals as of right his jury trial convictions of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(2)(b); and second-degree criminal sexual conduct (CSC-II), MCL 750.520c(2)(b). The trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12(1)(a), to 35 to 105 years' imprisonment for his CSC-I conviction and 25 to 75 years' imprisonment for his CSC-II conviction. On appeal, defendant argues that the trial court erred by allowing the testimony of several witnesses at trial. He further contends that defense counsel provided ineffective assistance for failing to object to this improper testimony. For the reasons set forth in this opinion, we affirm.

## I. BASIC FACTS

The victim accused defendant, her biological father, of touching her vaginal area with his hand and penetrating her vagina with his penis every day after school or "many times." The victim was unable to specify a time frame, but she claimed the abuse started when she was five or six years old.[1] The victim disclosed to her mother in March 2018 that defendant had inappropriately touched her, and her mother reported the allegation to the Grandville Police Department the same

---

[1] The victim was seven years old at the time of trial.

day. The department scheduled a forensic interview for the victim at the Children's Advocacy Center, and Officer Alex Niesen interviewed defendant before asking him to leave the home.

The day after the victim's disclosure, she attended the forensic interview, which was conducted by Amy Minton. After the interview, the victim went to the YWCA for an examination performed by Diane Decatur, a sexual assault nurse examiner (SANE). Shortly thereafter, the prosecution charged defendant. After the preliminary hearing, Minton forensically interviewed the victim a second time because she had made an additional disclosure to her mother.

At trial, the prosecution presented testimony from the victim, her mother, Officer Niesen, Decatur, and Minton. KP, defendant's biological son, and KP's brother, CR, also testified at trial because they temporarily lived with defendant and saw the victim regularly coming out of defendant's bedroom when they arrived home from school.[2] They both recalled once seeing the victim leave defendant's bedroom with the buckle of her pants undone.[3] The prosecution also called Thomas Cottrell, the chief programming officer at YWCA West Central Michigan, to testify as an expert regarding child sexual abuse, child sexual abuse victims, and sex offenders. In addition, the prosecution admitted other-acts evidence regarding several alleged incidents of sexual abuse that occurred between defendant and his stepdaughter, AJ, and two alleged incidents of sexual abuse that occurred between defendant and his biological daughter JT. Defense counsel had JT's mother and Officer DJ Verhage testify regarding JT's allegations against defendant. Andrew Measaell also testified at trial that he took over the case from Officer Niesen and that the victim's mother told him that no damages or tears were found on the victim. Additionally, he testified that no male DNA or pubic hair was recovered from the victim. The jury found defendant guilty on both counts, and the trial court sentenced him as described above. This appeal followed.

## II. ANALYSIS

### A. DECATUR'S TESTIMONY

Defendant first argues that he was denied his due process[4] right to a fair trial by the presentation of testimony from Decatur that impermissibly bolstered the victim's credibility. Specifically, defendant alleges that Decatur vouched for the victim when she testified that on the

---

[2] KP explained that he and CR attended a different school than the victim, and they would arrive home an hour later than she did.

[3] CP testified that the victim's underwear was also sticking out, and although he did not think anything of it at the time, he told her to pull up her pants. KP recalled another time when he walked into defendant's bedroom after the victim left and saw defendant under the covers. He could not tell whether defendant had on his clothes.

[4] Although defendant attempts to frame this issue as a claim of constitutional error implicating his due-process rights, evidentiary errors are not constitutional errors. *People v Blackmon*, 280 Mich App 253, 259; 761 NW2d 172 (2008). "Merely framing an issue as constitutional does not make it so." *Id*. at 261.

physical examination form, she checked the box indicating that there was "possible" pediatric sexual abuse. Albeit a close call, we disagree.

We review unpreserved claims of evidentiary error for plain error affecting a defendant's substantial rights. *People v Coy*, 258 Mich App 1, 12; 699 NW2d 831 (2003). This standard of review requires defendant to establish the following:

> [f]irst, there must be an error; second, the error must be plain (i.e., clear or obvious); and third, the error must affect substantial rights (i.e., there must be a showing that the error was outcome determinative). Moreover, reversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings, independent of guilt or innocence. [*Id.* (citations omitted).]

MRE 704 provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." However, the Michigan Supreme Court has repeatedly held that "an examining physician cannot give an opinion on whether a complainant had been sexually assaulted if the conclusion [is] nothing more than the doctor's opinion that the victim had told the truth." *People v Thorpe*, 504 Mich 230, 255; 934 NW2d 693 (2019) (quotation marks and citation omitted; alteration in original). See also *People v Smith*, 425 Mich 98, 109; 387 NW2d 814 (1986). When a medical professional's opinion is based "solely on what the victim had told him," the opinion testimony is objectionable. *Id.* See also *Thorpe*, 504 Mich at 255. The testimony is objectionable because it lacks a "reliable foundation," and jurors are just as qualified to evaluate the victim's testimony. *Smith*, 425 Mich at 109. However, "an examining physician, if qualified by experience and training relative to treatment of sexual assault complainants, can opine with respect to whether a complainant had been sexually assaulted when the opinion is based on physical findings *and* the complainant's medical history." *Thorpe*, 504 Mich at 255.

In this case, the trial court did not plainly err by permitting Decatur to testify about the fact that she had checked the box indicating "possible" pediatric sexual abuse on the victim's physical exam assessment. See *Coy*, 258 Mich App at 12. Decatur testified that she completed a medical review of the victim's symptoms to identify whether she had a history of illnesses or anything that could be of concern. The victim was five years old at the time of the examination, so Decatur also took a history from the victim's mother, seeking information regarding her doctor, medical history, immunizations, milestones, and similar information. The mother reported the victim having a history of genital pain for a couple of years, along with sadness, difficulty sleeping, and not getting along with other kids according to her teacher. Decatur then physically examined the victim, searching for injuries or areas of concern. Decatur observed an abrasion at "12 o'clock on the labia on the outside of the vaginal area, genital area." She noted that it is "not something you typically have … on your genital area," and was indicative of possible injury. Decatur described it as a scraping similar to "when you fall off a bike and you scrape yourself." The first layer of skin was missing.

She also discussed with the victim whether something had happened to her body, and the victim described acts perpetrated on her by defendant. Although Decatur initially testified that her

decision to check the box was based on the victim's disclosure, on redirect examination she testified that under "*factors involved in the decisionmaking process*," she noted the victim's abrasion on her labia majora. And she testified repeatedly that she could not say whether or not the victim was abused, as she could not make that judgment. Although a medical professional may not testify that a child was either possibly or probably sexually abused based solely on the child's disclosure, he or she "can opine with respect to whether a complainant had been sexually assaulted when the opinion is based on physical findings *and* the complainant's medical history." See *Thorpe*, 504 Mich at 255; see also *People v Del Cid*, 331 Mich App 532, 547; 953 NW2d 440 (2020). In this case, albeit not artfully delivered, Decatur's testimony as to possible sexual abuse was based on the victim's genital injury and her disclosure. While Decatur conceded that the scratch was not necessarily indicative of sexual assault, she also testified that the position of the scratch was concerning.

Because Decatur's decision to mark "possible" pediatric sexual abuse on the physical exam assessment form was based on both the victim's disclosure and a physical abrasion on the victim's genital area, the trial court did not plainly err by permitting Decatur to testify about it.

Defendant also argues that Decatur's testimony, in which she relayed what the victim told her at the time of the medical examination, constituted inadmissible hearsay. We disagree.

MRE 801(c) defines hearsay as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 802 provides that hearsay is inadmissible except as the Michigan Rules of Evidence permit, and MRE 803 provides specific exceptions to the general rule that hearsay is inadmissible. For example, MRE 803(4) provides an exception for "[s]tatements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment."

"The rationale for MRE 803(4) is the existence of (1) the self-interested motivation to speak the truth to treating physicians in order to receive proper medical care, and (2) the reasonable necessity of the statement to the diagnosis and treatment of the patient." *People v Shaw*, 315 Mich App 668, 674; 892 NW2d 15 (2016) (quotation marks and citation omitted). "This is true irrespective of whether the declarant sustained any immediately apparent physical injury." *People v Mahone*, 294 Mich App 208, 215; 816 NW2d 436 (2011). Additionally, "in cases of sexual assault, in which the injuries might be latent, such as contracting sexually transmitted diseases or psychological in nature, . . . a victim's complete history and a recitation of the totality of the circumstances of the assault are properly considered to be statements made for medical treatment." *Id*.

Defendant references MRE 803A in his brief; MRE 803A provides that "[a] statement describing an incident that included a sexual act performed with or on the declarant by the defendant or an accomplice is admissible to the extent that it corroborates testimony given by the declarant during the same proceeding" given that the following requirements are met:

> (1) the declarant was under the age of ten when the statement was made;

(2) the statement is shown to have been spontaneous and without indication of manufacture;

(3) either the declarant made the statement immediately after the incident or any delay is excusable as having been caused by fear or other equally effective circumstance; and

(4) the statement is introduced through the testimony of someone other than the declarant.

Furthermore, "[i]f the declarant made more than one corroborative statement about the incident, only the first is admissible under this rule." MRE 803A.

Defendant argues that Decatur's testimony at issue did not fall under the hearsay exception contained in MRE 803A. Notably, the prosecution does not dispute this in its brief on appeal, and we agree with defendant. The victim's statements to Decatur were not spontaneous because Decatur asked the victim questions to elicit the statements, and the statements were not the first she had made about defendant sexually abusing her, as those were made to her mother. See MRE 803A(2). Therefore, defendant is correct that Decatur's testimony regarding what the victim told her were not admissible under MRE 803A.

However, the prosecution correctly points out that Decatur's testimony was admissible under MRE 803(4). The statements the victim made to Decatur were "for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment." MRE 803(4). The Children's Advocacy Center recommended that the victim's mother take her to the YWCA for a physical examination because she had reported penetration, and the Children's Advocacy Center wanted to ensure that no "damage" had been done to her. Decatur testified that the purpose of the evaluation she performed on children was to ensure they were safe and to address any infections they might have. She also stated that she performed an examination of the child's entire body to see whether there was "any injury or anything that that we are concerned with." Decatur testified that she did not conduct a forensic interview with the victim; instead she conducted a medical evaluation to look for an injury. At the examination, Decatur asked the victim why she was present, whether any body part hurt, and whether something had happened to her body. Decatur also inquired into whether the victim had been threatened, whether she had secrets, and whether she felt safe at home. Decatur relayed to the jury her questions and the victim's responses.

Defendant claims that even if some of the statements the victim made to Decatur were admissible under MRE 803(4), the trial court should have limited or redacted the other, inadmissible statements. However, he has not specified which statements the trial court should have included or excluded, or how the trial court should have redacted the statements that were partially admissible; it is not our job to elaborate on or unravel this argument for defendant. See *People v Bowling*, 299 Mich App 552, 559-560; 830 NW2d 800 (2013).

We conclude that the trial court did not err by permitting Decatur to testify regarding statements the victim made to her in association with the medical evaluation. See *Coy*, 258 Mich App at 12.

Defendant also argues that his trial counsel was ineffective for failing to object to Decatur's above-described testimony. Our determination of "whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We review for clear error a trial court's findings of fact and de novo questions of constitutional law. *Id*. When the defendant fails to move "for a new trial or an evidentiary hearing, our review is limited to mistakes apparent from the record." *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

The defendant has the burden of establishing that he was denied effective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). He must "show (1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced" him. *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). For the first requirement, the defendant "must overcome the strong presumption that counsel's performance was born from a sound trial strategy," *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012), and that counsel's actions were not a "result of reasonable professional judgment," *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy, as is a decision concerning what evidence to highlight during closing argument." *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008) (citations omitted). This Court should not "substitute [its] judgment for that of counsel on matters of trial strategy" or "use the benefit of hindsight when assessing counsel's competence." *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). For the second requirement, the defendant "must show that, but for counsel's deficient performance, a different result would have been reasonably probable." *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

In this case, defense counsel's failure to object to Decatur testifying that she marked the box for possible pediatric sexual abuse on the victim's physical examination assessment form did not amount to ineffective assistance of counsel. Because Decatur's diagnosis was not based solely on the victim's disclosure, her diagnosis was admissible at trial, and any objection from defense counsel would have been futile. See *Thorpe*, 504 Mich at 255; *Ericksen*, 288 Mich App at 201.

Additionally, defense counsel was not ineffective in failing to object to Decatur's testimony regarding the victim's statements made during the medical evaluation. As discussed, Decatur's testimony was admissible because the victim's statements were made for the purpose of, and in connection with, the victim receiving medical treatment. See MRE 803(4). Any objection would have been meritless, and the failure to raise a meritless objection does not amount to ineffective assistance of counsel. See *Ericksen*, 288 Mich App at 201.

-6-

## B. COTTRELL'S TESTIMONY

Defendant argues that Cottrell improperly vouched for the victim's credibility at trial. We agree in part, but find the erroneously admitted testimony harmless in this case.

We review for an abuse of discretion a trial court's admission of evidence. *People v Duenaz*, 306 Mich App 85, 94; 854 NW2d 531 (2014). A trial "court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes." *People v Waclawski*, 286 Mich App 634, 645; 780 NW2d 321 (2009).

"The trial court has an obligation under MRE 702 to ensure that any expert testimony admitted at trial is reliable." *People v Dobek*, 274 Mich App 58, 94; 732 NW2d 546 (2007) (quotation marks and citation omitted). When admitting expert testimony, trial courts must determine whether "the testimony (1) will assist the trier of fact to understand a fact in issue, (2) is provided by an expert qualified in the relevant field of knowledge, and (3) is based on reliable data, principles, and methodologies that are applied reliably to the facts of the case." *People v Kowalski*, 492 Mich 106, 120; 821 NW2d 14 (2012).

Additionally, in *People v Peterson*, 450 Mich 349, 352; 537 NW2d 857 (1995), amended 450 Mich 121 (1995), the Michigan Supreme Court provided the following limits on expert witness testimony in child sexual abuse cases: "(1) an expert may not testify that the sexual abuse occurred, (2) an expert may not vouch for the veracity of a victim, and (3) an expert may not testify whether the defendant is guilty." The Michigan Supreme Court also held that an expert witness may testify about the following:

> (1) an expert may testify in the prosecution's case in chief regarding typical and relevant symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an actual abuse victim, and (2) an expert may testify with regard to the consistencies between the behavior of the particular victim and other victims of child sexual abuse to rebut an attack on the victim's credibility. [*Id.* at 352-353.]

Furthermore, the Michigan Supreme held that in general "it is improper for a witness or an expert to comment or provide an opinion on the credibility of another person while testifying at trial." *People v Douglas*, 496 Mich 557, 583; 852 NW2d 587 (2014) (quotation marks and citation omitted). See also *Dobek*, 274 Mich App at 71 ("It is generally improper for a witness to comment or provide an opinion on the credibility of another witness, because credibility matters are to be determined by the jury.").

In this case, a portion of Cottrell's testimony was improper. Although Cottrell was properly permitted to "testify in the prosecution's case in chief regarding typical and relevant symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an actual abuse victim," he crossed the line at one point by testifying regarding "the consistencies between the behavior of the particular victim and other" child sexual abuse victims before the victim's credibility was attacked. *Peterson*, 450 Mich at 352.

Cottrell's testimony regarding the three general categories of child sexual abuse disclosures and misconceptions regarding the profile of a sex offender was permissible.[5] Additionally, although the prosecutor prefaced a couple of her questions with specific reference to previously admitted testimony relevant to her inquiry, asking if that was "a red flag," Cottrell did not respond specifically; rather, he responded with testimony regarding the general behaviors of offenders and conduct by child sexual abuse victims that might be incorrectly construed as inconsistent with an actual abuse victim. See *Peterson*, 450 Mich at 352-353. For example, the prosecution specifically asked Cottrell whether it was a red flag that the victim gave an initial statement to the Children's Advocacy Center and then later disclosed further details, and Cottrell responded by stating that most children typically disclose in a graduated process, that it was not atypical for a child to add more information to a disclosure later, and that gradual disclosure was not a red flag. However, as defendant notes in his brief on appeal, at one point on direct examination, Cottrell specifically testified regarding the victim in this case when he stated that it "absolutely" did not surprise him that the victim, who was five years old, made a delayed disclosure. He then went on to explain how delayed disclosure was not the exception. This testimony was improper. See *id*. at 376 (concluding that testimony from expert witnesses in regard to "the consistencies between the victim's behavior and the behavior of typical victims of child sexual abuse" was erroneous "[b]ecause the defendant never argued that the victim's behavior was inconsistent with that of a typical victim . . .").

Defendant also points out that on redirect examination, the prosecution likely bolstered the credibility of the victim and the victim's mother when asking Cottrell,

> Defense Counsel talked about changes in behavior. If we heard testimony that the victim had triggers that made her upset from when she was sexually abused, for example, if she resisted sexual assault, she was threatened that she was not going to be able to have dinner that night, and so now she eats as much as she can, would that be a behavioral change consistent with being sexual [sic] abused?

The prosecution's question was likely regarding the victim's and her mother's statements regarding the impact that defendant's punishments had on the victim. Cottrell agreed that "[w]hen there is that much of a story present," the behavior would be consistent, and he clarified that the rendition that the prosecution presented to him made "perfect sense." He stated that it was difficult to look at isolated behavior and determine whether it was "indicative of sexual abuse, but if the child is explaining or there's an explanation for it, then that stress reaction or that behavior or that protective mechanism does make perfect sense."

As the prosecution notes in its brief on appeal, on cross-examination, defense counsel specifically opened the door to the question when asking Cottrell, "We've heard some testimony, Mr. Cottrell, and we've heard some testimony that the alleged victim in this case has some behavior issues. Isn't it true that behaviors aren't really diagnostic of trauma?" Cottrell responded to defense counsel's question by stating that it depended on the behavior and how the behavior

---

[5] It was made very clear several times during his testimony that Cottrell had never met or interviewed the victim, and that he was not opining on victim credibility.

presented. Sometimes a behavior could be, and he explained how certain behaviors were and were not symptoms of sexual abuse. Defense counsel went on to ask Cottrell, "so changes in behavior isn't necessarily indicative of abuse, right?" Cottrell responded in the affirmative, stating that "I don't think you can use a child's behavior in and of itself to directly make a link to something abusive happening." Further, defense counsel questioned Cottrell as to whether a "disorganized family" and frequent moves could cause stress in a young child. Cottrell answered, "yes." As a result, defense counsel's questions in this regard implied that the victim's behaviors previously testified to at trial were indicative of a stressful home environment instead of sexual abuse. Defense counsel also inquired into the effects of coaching and suggestibility in a five-year old, as well as lying based on having received repeated information from another adult, which Cottrell acknowledged could lead to a phenomenon called "source attribution" in children. In response, the prosecutor elicited testimony regarding indicators that might reveal a child has been coached, and that certain behaviors, such as those exhibited by the victim, could be consistent with sexual abuse. See *id*. at 373. Cottrell also noted, however, that a child's behaviors such as those discussed at trial could not be taken one at a time and be deemed indicative of sexual abuse.

Therefore, the only improper testimony that defendant challenged was Cottrell's testimony affirming that it was normal that the victim in this case made a delayed disclosure. However, the trial court permitting this testimony constituted harmless error. See *Thorpe*, 504 Mich at 252. In *Thorpe*, 504 Mich at 252, 260, the Michigan Supreme Court held that Cottrell's improper expert witness testimony required reversal under the harmless error standard, noting that the case "was a true credibility contest" because "[t]here was no physical evidence, there were no witnesses to the alleged assaults, and there were no inculpatory statements." In this case, there were no eyewitnesses to the sexual abuse. However, CR and KP provided testimony confirming that they saw the victim leave defendant's bedroom regularly when they got home from school and once with her pants unbuckled, which circumstantially corroborated the victim's allegation that defendant regularly sexually abused her in his bedroom after school. Additionally, Officer Niesen testified at trial regarding inculpatory statements defendant made to him. For example, after Officer Niesen told defendant that one of his children made an allegation against him regarding inappropriate touching, defendant volunteered the victim's name. Defendant also told Officer Niesen that he tickled his children's inner thighs and buttock area. Additionally, when Officer Niesen asked defendant about surveillance, defendant denied that there were cameras in the bedroom, even though Officer Niesen did not tell defendant that the victim had accused him of abusing her in the bedroom. Regarding physical evidence, although not conclusive of sexual abuse, Decatur testified that she found an abrasion on the victim's genital area. And finally, as is discussed later in this opinion, the trial court properly admitted other acts evidence pursuant to MCL 768.27a(1) indicating that defendant had sexually abused two of his other minor children. Therefore, we conclude that a different outcome would not have resulted without Cottrell's improper testimony. See *id*. See also *Peterson*, 450 Mich at 378-379 (determining that the erroneous expert testimony constituted harmless error because it did not ultimately affect the jury's verdict).

Defendant also argues that he was denied effective assistance because his defense counsel failed to object to Cottrell's improper testimony. We disagree because the record does not support this contention.

At a motion hearing, defense counsel initially objected to Cottrell's giving testimony, challenging the late notice of Cottrell as a witness, as well as the reliability of the data on which Cottrell relied. On the first day of the jury trial, before the trial started, defense counsel raised concerns that Cottrell's testimony would improperly bolster the victim's credibility. Additionally, during trial, defense counsel repeatedly objected to Cottrell's testimony on the ground that he was improperly bolstering the victim's credibility. Therefore, the record does not support defendant's contention of ineffective assistance with respect to Cottrell. See *Randolph*, 502 Mich at 9.

## C. MINTON'S TESTIMONY

Defendant argues that Minton provided inadmissible hearsay evidence when relaying what the victim told her about the alleged sexual abuse. We agree.

Minton testified at trial that during her first interview with the victim, the victim told her that defendant touched the area she "used to pee," and that defendant moved his hand inside her private area "numerous times" when the victim's mother was not home. Minton also shared that the victim repeatedly told her she was scared, and that defendant threatened to "whoop" her for disclosing. Regarding her second interview, Minton testified that the victim told her defendant put his private on her private and moved it and his body "up and down" more than one time when the victim's mother was not home.

Defendant argues, and the prosecution effectively concedes, that Minton's testimony regarding the victim's statements was inadmissible hearsay. As defendant correctly points out in his brief, the statements were inadmissible under MRE 803A because the victim's statements to Minton were not spontaneous, and they were not the first statements she had made about defendant sexually abusing her. Moreover, they do not appear to fit under another hearsay exception.

Although admission of Minton's hearsay testimony constituted error that was plain and obvious, it did not affect defendant's substantial rights. *Coy*, 258 Mich App at 12. See *id*. The victim testified at trial regarding her allegations against defendant, and both the victim's mother and Decatur properly testified regarding the victim's allegation that defendant sexually abused her, which means that Minton's testimony was cumulative. See *People v Rodriguez*, 251 Mich App 10, 29; 650 NW2d 96 (2002) (stating that "[a]ny error would not have been outcome determinative given other similar testimony and the nature of the evidence against" the defendant). In light of other persuasive and properly admitted evidence, reversal is not required.

Defendant also argues that he was denied effective assistance because his counsel failed to object to Minton's hearsay testimony. Review of the record reveals that defense counsel's failure to object was likely trial strategy. See *Horn*, 279 Mich App at 39. Instead of objecting when Minton relayed the victim's statements, defense counsel undertook to discredit the victim's statements during the second interview by emphasizing the difference between her first admissions to Minton and her second admissions. Defense counsel also had Minton explain to the jury that her job was not to determine whether the victim was truthful. Additionally, counsel attempted to discredit how Minton performed the forensic interviews and had her admit that the credibility of the victim's statements depended on how well the forensic interview was conducted. The record indicates that defense counsel's attempt to use Minton's hearsay statements to help defendant's

case was unsuccessful, but we will not "use the benefit of hindsight when assessing counsel's competence." *Unger*, 278 Mich App at 242-243.

Even assuming that defense counsel's performance was objectively deficient, defendant has failed to establish that "but for counsel's deficient performance, a different result would have been reasonably probable" because of the significant amount of evidence admitted against defendant at trial. *Armstrong*, 490 Mich at 290. As noted, the victim, Decatur, and the victim's mother all properly testified at trial regarding the victim's allegations against defendant. Decatur also testified regarding a physical injury to the victim's genital area, which could be consistent with sexual abuse. Officer Niesen testified regarding the inculpatory statements defendant made to him. Additionally, although KP and CR were not eyewitnesses to the sexual abuse, their testimony added corroborative support to the victim's statements that defendant sexually abused her in his bedroom after school. Furthermore, the prosecution properly admitted other-acts evidence against defendant to show he had the propensity to commit sexual abuse against children. Therefore, defendant was not denied the effective assistance of counsel.

## D. OTHER-ACTS EVIDENCE

Finally, defendant argues that the trial court abused its discretion by permitting the prosecution to admit other-acts evidence pertaining to the allegations that AJ and JT made against him under MCL 768.27a(1), because the evidence did not survive the MRE 403 balancing test. We disagree.

"When a defendant is charged with a sexual offense against a minor, MCL 768.27a allows prosecutors to introduce evidence of a defendant's uncharged sexual offenses against minors without having to justify their admissibility under MRE 404(b)." *People v Pattison*, 276 Mich App 613, 618-619; 741 NW2d 558 (2007). "In many cases, it allows evidence that previously would have been inadmissible, because it allows what may have been categorized as propensity evidence to be admitted in this limited context." *Id*. at 619. However, MCL 768.27a remains subject to MRE 403. *People v Watkins*, 491 Mich 450, 486; 818 NW2d 296 (2012). In *Watkins*, 491 Mich at 487-488, the Michigan Supreme Court provided the following factors to consider when determining whether other-acts evidence admitted under MCL 768.27a should be excluded pursuant to MRE 403:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony.

These considerations are meant to be illustrative and not exhaustive. *Id*. at 488.

In this case, both JT's and AJ's allegations survive the MRE 403 balancing test because the probative value of the evidence was not substantially outweighed by the danger of its unfair prejudice. See MRE 403. AJ testified in regard to two inappropriate occurrences involving defendant in 2011, and a third incident that occurred a couple of years later. Although there was a gap in time from when defendant was alleged to have begun abusing the victim, the victim's

-11-

mother testified that defendant was incarcerated, starting in 2011, for three years. Additionally, assuming the third incident involving AJ occurred in 2015, and defendant sexually touched the victim in this case in 2017 or 2018, the incidents were only a few years a part. Furthermore, both AJ and the victim lived with defendant at the time they were abused, and defendant was AJ's stepfather and the victim's biological father. The victim was five or six when the abuse occurred, and AJ testified that she was 10 years old when the abuse started, although the third incident must have occurred when she was approximately 13 years old. Additionally, both AJ and the victim accused defendant of threatening them for not going along with his advances. Furthermore, AJ's testimony was supported by the testimony of the victim's mother. For example, the victim's mother remembered AJ bringing up one of the incidents in 2017, before the victim's disclosure.

JT alleged that defendant sexually touched her in 2016, when she was nine years old. The victim in this case alleged that defendant sexually abused her when she was five or six years old, which would have been in 2017 or 2018 and which means the other act was close in time. Defendant was the biological father of both JT and the victim. JT's mother testified that JT made an allegation against defendant in 2010 regarding inappropriate touching, and that the 2016 incident occurred shortly after she permitted JT to see defendant again alone after he served three years in prison. JT's mother also testified that while she did not initially believe JT, she did so after the victim made her disclosure.

The record supports the trial court's ruling to admit evidence regarding AJ's and JT's allegations against defendant because it survives the MRE 403 balancing test. See *Duenaz*, 306 Mich App at 94. The allegations involved sexual abuse that occurred within a relatively close time frame as the charged offenses in this case. Moreover, the three alleged victims were young children who were related to defendant by blood or affinity, and the abuse occurred in defendant's home while the children were in his care. As a result, the other-acts evidence was highly relevant in establishing defendant's propensity to sexually abuse young children with whom he has ready access and control. This evidence was not unfairly prejudicial. See *Watkins*, 491 Mich at 487 (explaining that "other-acts evidence admissible under MCL 768.27a may not be excluded under MRE 403 as overly prejudicial merely because it allows a jury to draw a propensity inference"). Further, because no physical evidence linked defendant in this case, the other-acts evidence was necessary to support the victim's testimony. See *id*. at 491 (concluding that "the other-acts evidence also supported the victim's credibility, presented circumstances similar to those underlying the charged offense, and established [the defendant's] modus operandi").

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Jane M. Beckering
/s/ Colleen A. O'Brien

-12-