*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KASHEEN CALEIN KELLIS,

Defendant-Appellant.

UNPUBLISHED
April 11, 2025
9:39 AM

No. 369986
Calhoun Circuit Court
LC No. 22-001356-FC

Before: BOONSTRA, P.J., and LETICA and RICK, JJ.

PER CURIAM.

Defendant appeals as of right his convictions of three counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a); MCL750.520b(2)(b) (sexual penetration of victim less than 13 years of age by defendant 17 years of age or older). Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to 30 to 75 years' imprisonment for each conviction. We affirm defendant's convictions and sentence.

## I. FACTUAL BACKGROUND

This case arises out multiple sexual assaults committed by defendant against the minor victim, AW. Defendant was the boyfriend of AW's mother, CW. The assaults occurred in 2021 and 2022,[1] when AW spent weekends living at CW's home.

Defendant's jury trial began on November 14, 2023. AW testified and described three instances of defendant sexually assaulting her while she was at CW's home. In one instance, defendant entered her room at night, unlocking her door with his fingernail. Defendant got in AW's bed and touched AW's "private parts" with his hand while AW pretended to be asleep. Specifically, the private part was the area AW used to "pee." In another instance, defendant entered AW's room at night and put his "private part" into her "behind." AW also described

---

[1] The exact dates of the assaults are unclear.

-1-

another time that she went into CW's room, while CW was asleep in bed with defendant and AW's younger brothers. Defendant again put his "front" "private" into AW's "behind."

AW's testimony was circumstantially corroborated by numerous witnesses. CW discussed AW's behavioral changes, including AW locking her bedroom door at night. CW also testified that AW stopped wanting to go to CW's home in 2022. Laura Williams (Williams), AW's caregiver during the week, also observed behavioral changes in AW. Dr. Sarah Brown (Brown), a child abuse pediatrician, testified that then 8-year-old AW was in the beginning stages of puberty, and there was research showing that early puberty had been correlated with sexual abuse.

Battle Creek Police Department Detective Cody Longon (Longon) testified that he interviewed defendant in April 2022. The trial court admitted the video of defendant's interview. During the interview, defendant stated that CW was no longer his significant other. Defendant said that CW, with whom he had an up-and-down relationship, was angry over their current relationship status and had threatened him. Defendant opined that it was possible that CW would make false allegations against him or create a story that put him in a position where he would have to fight for his freedom. Longon explained that the accusations did not come from CW because she was unaware of AW's allegations. Defendant then described loving AW with his whole heart; however, she developed "tendencies" from CW and lied "a lot." Outside of AW jumping on defendant, him swinging her around, and him giving her advice, defendant did not interact with AW. "[F]or the most part," defendant "stay[ed] around [CW] . . . or . . . the boys, . . . for the simple fact that she's a little girl, and I don't want any type of weird thoughts to be developed." Nor did defendant have much time to spend with AW because she was only with CW on the weekends. Even so, AW loved defendant and he loved her. Defendant admitted that he would go into AW's room at night to check on her because she was afraid of the dark. And, although AW locked her bedroom door, defendant could unlock it because it had a slot. Defendant could use a tool or his "thumb a little bit to turn it" and enter. Defendant thought that AW barricaded her door to prevent her younger brother from coming in and messing up her stuff. AW also asked defendant to watch TV with her in her room and they would dance to YouTube videos. AW had asked defendant to lay down with her, but he did not do so. Instead, defendant explained that it was inappropriate for him to lay down with AW. The pair then came to an understanding that defendant would only sit down with AW until she drifted off to sleep. Defendant denied falling asleep with AW. At times, AW's fear of the dark caused her to jump out of her bed and go into the room that CW and defendant shared. Defendant admitted that AW slept in the king-sized bed with him, CW, and AW's younger brothers; however, AW slept near CW, not defendant. Moreover, defendant had no reason to discuss sex or sexual body parts with AW because she was so young and had CW to talk to about those subjects. Longon told defendant that AW said that he unlocked her door with his hand and laid next to her while she acted as though she was sleeping. Thereafter, defendant licked his finger and touched AW before becoming "hard" and anally penetrating her. When directly asked why AW would accuse him of anal penetration, defendant said that he did not know because he had "never approached her" and their interactions had "always been" that of a father and daughter.

At trial, defendant's sister testified for the defense. She never witnessed defendant engage inappropriately with the children and never saw defendant go into AW's bedroom.

-2-

Forensic interviewer Kelli Jahns also testified for the defense. Jahns described how AW struggled with the rule that AW not guess during the interview. Jahns gave AW four examples of the no-guessing rule before AW comprehended it. Jahns testified that AW disclosed multiple sexual assault incidents during her forensic interview, including that defendant digitally penetrated AW's buttocks; however, AW described defendant as putting his penis "on her butt" rather than "in" it. Additionally, the interview team ruled out certain alternative hypotheses about why AW made such allegations against defendant, including that CW had coached AW because, at that time, CW was unaware of AW's allegations.[2]

The jury found defendant guilty of three counts of CSC-I.[3] The trial court sentenced defendant, a fourth-felony habitual offender, MCL 769.12, to concurrent terms of 30 to 75 years' imprisonment on each count. This appeal followed.

## II. MISTRIAL

Defendant argues the trial court erred by denying his motion for a mistrial after two portions of defendant's police interview video were played for the jury, contrary to the parties' pretrial agreement to redact them. We disagree.

"This Court reviews for an abuse of discretion the trial court's decision to deny a defendant's motion for a mistrial. The trial court abuses its discretion when its decision falls outside the range of principled outcomes." *People v Lane*, 308 Mich App 38, 60; 862 NW2d 446 (2014) (footnotes omitted). "The trial court should only grant a mistrial for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial and when the prejudicial effect of the error cannot be removed in any other way." *Id.* at 60 (quotation marks and footnotes omitted). "For a due process violation to result in reversal of a criminal conviction, a defendant must prove prejudice to his or her defense. Further, the moving party must establish that the error complained of is so egregious that the prejudicial effect can be removed in no other way." *People v Dickinson*, 321 Mich App 1, 18; 909 NW2d 24 (2017) (quotation marks and citations omitted). "The trial court may consider, among other things, whether the prosecutor intentionally presented the information to the jury or emphasized the information." *Lane*, 308 Mich App at 60 (footnote omitted).

After jury selection in this case, the defense and prosecution agreed to redact certain portions of defendant's police interview video, including references related to domestic violence and a CPS case. During trial, however, those two portions of the video were played for the jury. Specifically, on the video, Detective Longon discussed defendant's past living arrangements and

---

[2] In April 2022, AW made her initial disclosure to a Children's Protective Services (CPS) worker investigating a complaint that defendant and CW's baby had been left home alone for several hours. Although defendant's jury heard that AW made her initial disclosure to a worker, it did not hear why that investigation occurred.

[3] During trial, the prosecutor moved to dismiss an additional CSC-I charge (digital penetration of buttocks) and a second-degree criminal sexual conduct (CSC-II) charge (touching of the victim's breasts) because AW did not testify about those acts.

mentioned defendant and CW "got a domestic" after living together for about a year. The video also included a segment in which Longon stated AW first disclosed the assaults to a school counselor before correcting himself: "I'm sorry, not a school counselor, let me back up, it was CPS. So CPS because of the incident that happened with you guys with the baby being left in the house. . . ."

The prosecutor believed that the IT Department had redacted the agreed-upon segments, and she "scanned through the sections" that the parties had discussed. The court also afforded defense counsel time to review the interview video. Thereafter, defense counsel represented to the court that she had reviewed the redactions and had no objection. However, the two segments were not removed. And, when the CPS reference occurred, the prosecutor asked for a recess, which the court granted.

Outside of the jury's presence, the prosecutor noted that she had been informed that this section of the video had been redacted. Defense counsel then mentioned that there was an additional portion that had been played that pertained to "a domestic."

When the court asked what the parties proposed, defense counsel requested a mistrial, stating that she did not think a curative instruction could unring the bell. The trial court reminded counsel that he had afforded them the opportunity to review the video to ensure the redactions were made. The court advised counsel to take their time and ensure that the other redactions were made and that a new copy of the video was made, removing the two references to a domestic and CPS. The court also asked defense counsel to ponder whether to request a curative instruction. The court further determined that a mistrial was not appropriate given the limited nature of the references, the court's ability to clarify or correct what had occurred via a jury instruction, and the opportunity that the parties had to review the video and ensure that the redactions were made. Defense counsel replied that she had only looked at the snippets that were purportedly redacted and she asked the court not to instruct the jury. The prosecutor agreed, stating that she looked at the timestamps she had in front of her and believed that the appropriate redactions had been made.

Under these circumstances, the trial court did not abuse its discretion by denying defendant's motion for a mistrial. Defendant has not shown that he was unfairly prejudiced by the unredacted video clips. The two references were brief and made during an over half-hour long video. The segments did not provide details on any past "domestic" or CPS encounter. The video did not reveal the nature of the "domestic" or whether defendant was the aggressor. The video also did not detail defendant's involvement in the CPS matter.

Further, defendant has not shown the inclusion of the unredacted video clips was outcome-determinative. There was significant evidence of defendant's guilt presented at trial. The jury was able to hear AW's first-hand account of the assaults. The jury also heard testimony from AW's mother and caretaker, who described AW's behavioral changes, including locking her bedroom door at night while in her mother's home with defendant. The jury further heard testimony about AW's forensic interview team ruling out certain alternative hypotheses about why AW would say defendant assaulted her, including that her mother was behind the allegations despite AW not having revealed them to her mother. Furthermore, eight-year-old AW began puberty early, a process that the pediatric doctor testified had been correlated with sexual abuse.

Additionally, the jury could infer defendant's guilt on the basis of statements he made during his interview with Longon. Although defendant denied assaulting AW, he admitted to going into her bedroom at night as she had described. Defendant also made certain comments to Longon that the jury could find incriminating, including defendant's remark that he avoided interacting with AW because he did not "want any type of weird thoughts to be developed."

Further, to the extent the inclusion of the unredacted video had some prejudicial effect, defendant is unable to demonstrate a mistrial was necessary because "the error complained of is so egregious that the prejudicial effect can be removed in no other way." *Dickinson*, 321 Mich App at 18 (quotation marks and citations omitted). Any potential prejudice could have been eliminated by a curative jury instruction. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). The trial court offered to give the jury a curative instruction. Defendant declined. This Court has determined that a trial court did not abuse its discretion when it denied a defendant's motion for a mistrial after he "was offered the opportunity to have any error arising out of the testimony of the arresting officer cured by an instruction to the jury" and "did not take advantage of this offer." *People v Stewart*, 199 Mich App 199, 200; 500 NW2d 756 (1993). In this case, defendant was likewise given the opportunity for a curative instruction and declined to take advantage of it. Under the circumstances presented in this case, the trial court did not abuse its discretion when it denied defendant's motion for a new trial, and we conclude that defendant was not denied due process.

## III. PROSECUTORIAL ERROR

Defendant asserts the prosecutor erred[4] by making improper statements at trial and his counsel was ineffective for failing to object to the improper statements. We disagree.

## A. ALLEGED PROSECUTORIAL ERRORS

"In order to preserve a claim of prosecutorial misconduct for appellate review, a defendant must have timely and specifically objected below, unless objection could not have cured the error." *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). Defendant did not object to the prosecutor's statements at trial, and therefore, this issue is unpreserved.

"Concerning preserved issues of prosecutorial misconduct, this Court evaluates the challenged conduct in context to determine if the defendant was denied a fair and impartial trial. Where a defendant fails to object to an alleged prosecutorial impropriety, the issue is reviewed for plain error." *People v Aldrich*, 246 Mich App 101, 110; 631 NW2d 67 (2001) (citations omitted).

To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the

---

[4] Although defendant frames this issue as one of prosecutorial misconduct, we find it is more appropriate to refer to the claimed error as "prosecutorial error," rather than "prosecutorial misconduct." See *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015) (citation omitted).

plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. [*People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) (citations omitted).]

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. Prosecutorial misconduct issues are decided on a case-by-case basis, and the reviewing court must examine the record and evaluate a prosecutor's remarks in context." *Brown*, 294 Mich App at 382-383 (citations omitted). "Where there is no allegation that prosecutorial misconduct violated a specific constitutional right, a court must determine whether the error so infected the trial with unfairness as to make the resulting conviction a denial of due process of law." *People v Blackmon*, 280 Mich App 253, 262; 761 NW2d 172 (2008).

"Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial. They are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008) (citations omitted). "[T]he prosecutor may comment upon the testimony and draw inferences from it and may argue that a witness, including the defendant, is not worthy of belief." *People v Buckey*, 424 Mich 1, 14-15; 378 NW2d 432 (1985).

Nevertheless, prosecutors should not resort to civic duty arguments that appeal to the fears and prejudices of jury members or express their personal opinion of a defendant's guilt, and must refrain from denigrating a defendant with intemperate and prejudicial remarks. Such comments during closing argument will be reviewed in context to determine whether they constitute error requiring reversal. [*People v Bahoda*, 448 Mich 261, 282-283; 531 NW2d 659 (1995) (footnotes omitted).]

"A prosecutor may not suggest that defense counsel is intentionally attempting to mislead the jury." *People v Watson*, 245 Mich App 572, 592; 629 NW2d 411 (2001). "However, the prosecutor's comments must be considered in light of defense counsel's comments. [A]n otherwise improper remark may not rise to an error requiring reversal when the prosecutor is responding to the defense counsel's argument." *Id*. at 592-593 (quotation marks and citations omitted; alteration in original).

Defendant argues the prosecutor improperly expressed her personal opinion during her opening statement, when she stated: "Detective Longon does an interview with the defendant, Kasheen Kellis. And several of his statements match up to what [AW] says happened to her. There are a lot of things that match up but he never admits to what he did." Reviewing the prosecutor's statement in context, we conclude that it was not an expression of her personal opinion. The prosecutor made this statement after explaining AW's allegations against defendant. The statement was made to give an overview of the evidence and the prosecution's theory of the case. The prosecutor planned to introduce evidence showing that defendant made certain statements consistent with AW's recollection of the assaults.

Defendant also argues the prosecutor improperly expressed her personal opinion during her closing argument, when stating:

The defendant tried to say that—in his interview that [CW] would make this up, she made up the story. If you remember, [CW] didn't know this was happening, how could she make it up and be out to get [defendant] if she didn't know it was happening? Couldn't. She couldn't because [AW] told you the truth.

In context, the prosecutor made this statement in response to defendant's theory that AW was coached by CW. The prosecutor argued CW was unaware of the allegations when AW disclosed them. In other words, the prosecutor was not personally opining that AW was telling the truth; rather, she argued from the evidence that AW was not coached by CW to accuse defendant.

Finally, defendant argues the prosecutor disparaged defense counsel during her closing statement by stating:

They're gonna come up here and they're gonna throw a bunch of stuff at the wall, try to see what sticks, what makes sense, what takes your mind down a rabbit hall—hole. Bring it back around. Remember what it is I have to prove to you. The elements of this case through testimony and evidence, okay? Keep that in mind when you're listening.

We conclude that the prosecutor did not comment on defense counsel's character or personality. The prosecutor did not "suggest that defense counsel [was] intentionally attempting to mislead the jury." *Watson*, 245 Mich App at 592. Moreover, her remarks were fleeting, and, ultimately, urged the jury to focus on the elements. Further, even if the prosecutor's remark was somewhat intemperate, any prejudice was cured by the trial court's instructions. "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions." *Unger*, 278 Mich App at 235 (citations omitted). In this case, the trial court instructed the jury that the attorneys' statements were not evidence multiple times. Therefore, we conclude that defendant was not denied a fair trial or due process of law.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant further argues his defense counsel was ineffective for failing to object to the prosecutor's improper comments. We disagree.

The issue of ineffective assistance of counsel may be preserved by moving in "the trial court for a new trial or a *Ginther* hearing." *People v Jackson*, 313 Mich App 409, 431; 884 NW2d 297 (2015) (footnote omitted); see also *People v Ginther*, 390 Mich 436, 442-443; 212 NW2d 922 (1973). The issue of ineffective assistance of counsel may also be preserved "by filing in this Court a motion for remand to the trial court for a *Ginther* hearing." *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020) (footnote omitted). Defendant did not move for a *Ginther* hearing in the trial court or this Court. And, because defendant's ineffective assistance of counsel claim was unpreserved, "our review is limited to errors apparent on the record." *Unger*, 278 Mich App at 236.

"Both the Michigan and the United States Constitutions require that a criminal defendant enjoy the assistance of counsel for his or her defense." *Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). See also US Const, Am VI; Const 1963, art 1, § 20. "In order to obtain a new trial, a

defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51.

"In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *Id.* at 52. "Initially, a court must determine whether the strategic choices [were] made after less than complete investigation, and any choice is reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* (quotation marks and citation omitted). "A sound trial strategy is one that is developed in concert with an investigation that is adequately supported by reasonable professional judgments." *People v Grant*, 470 Mich 477, 486; 684 NW2d 686 (2004).

"Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). "Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *Unger*, 278 Mich App at 242. "[T]here are times when it is better not to object and draw attention to an improper comment. Furthermore, declining to raise objections, especially during closing arguments, can often be consistent with sound trial strategy." *Id.* (quotation marks and citations omitted).

We conclude that defense counsel's failure to object to the prosecutor's remarks was not objectively unreasonable because it would have drawn the jury's attention to them. See *Unger*, 278 Mich App at 242. And, as previously discussed, where the prosecutor did not commit error, any objection would have been futile. Moreover, even if counsel had performed deficiently by failing to object, any potential prejudicial effect of the prosecutor's statements was overcome by the trial court's curative instructions that the parties' arguments were not evidence. See *id.* at 235.

## IV. VERDICT FORM

Defendant contends that he was denied a fair trial premised on errors on his jury verdict form. Defendant also asserts he was denied the effective assistance of counsel because defense counsel failed to object to the jury verdict form. We disagree.

### A. ALLEGED ERRORS

Defendant argues that the jury verdict form was improper because it did not provide the jury an opportunity to find him guilty of CSC-I of a child under the age of 13, which requires a sentence of life or any term of years, before making a separate special finding that the child was under the age of 13 and that he was over the age of 17, which requires a minimum 25-year sentence. Defendant also claims that the jury form improperly used the word "victim." We disagree.

"The verdict form is treated as, essentially, part of the package of jury instructions." *People v Eisen*, 296 Mich App 326, 330; 820 NW2d 229 (2012). "A party must object or request a given jury instruction to preserve the error for review." *People v Sabin*, 242 Mich App 656, 657; 620 NW2d 19 (2000), citing MCL 768.29. Defendant did not object to the jury instructions or the verdict form. Instead, defendant waived this issue. "[W]aiver is the intentional relinquishment or abandonment of a known right." *Carines*, 460 Mich at 762 n 7 (quotation marks and citation

omitted).  "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error."  *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks and citations omitted).  "A defendant may waive his or her challenge to jury instructions."  *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019).

"A defendant waives an issue by expressly approving of the trial court's action.  When the trial court asks whether a party has any objections to the jury instructions and the party responds negatively, it is an affirmative approval of the trial court's instructions."  *Id*. (citations omitted); See also *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011) ("[B]ecause defense counsel here explicitly and repeatedly approved the instruction, defendant has waived the error.").

During trial, the court asked the parties if they had any objections or corrections to the proposed jury instructions and verdict form.  Defense counsel expressly stated: "No corrections and no objections."  Because defendant expressly waived his challenge to the jury verdict form, defendant may not seek appellate review on this issue.  Moreover, defense counsel reported discussing the possibility of having lesser-included instructions read to the jury.  For example, counsel discussed CSC-II as a lesser-included offense and defendant indicated that he did not want that instruction added.

## B.  INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues defense counsel was ineffective for failing to object to the jury instructions and verdict form.  Defendant did not move for a new trial in the trial court or for remand in this Court on this basis.  *Abcumby-Blair*, 335 Mich App at 227 (footnote omitted); *Jackson*, 313 Mich App at 431 (footnote omitted); see also *Ginther*, 390 Mich at 442-443.  Therefore, "our review is limited to errors apparent on the record."  *Unger*, 278 Mich App at 236.

Again, "[i]n order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different."  *Trakhtenberg*, 493 Mich at 51.  "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy."  *Id*. at 52.  "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel."  *Ericksen*, 288 Mich App at 201.

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him.  Further, a criminal defendant is deprived of his constitutional right to a jury trial when the jury is not given the opportunity to return a general verdict of not guilty."  *Wade*, 283 Mich App at 467 (quotation marks and citations omitted).  "Jury instructions are to be read as a whole rather than extracted piecemeal to establish error.  And even if somewhat imperfect, instructions do not create error if they fairly presented the issues to be tried and sufficiently protected the defendant's rights."  *Id*. at 464 (citations omitted).

MCL 750.520b(1) provides circumstances under which a defendant is guilty of CSC-I, including "if he or she engaged in sexual penetration with the victim and the victim was less than

13 years old." *People v Solloway*, 316 Mich App 174, 181; 891 NW2d 255 (2016); see also MCL 750.520b(1)(a). The punishment for CSC-I is "imprisonment for life or any term of years," MCL 750.520b(2)(a), with two exceptions. The relevant exception in this case is MCL 750.520b(2)(b), which provides that when a person, who is 17 years of age or older, commits a CSC-I against a child, who is under the age of 13, he must be punished "by imprisonment for life or any term of years, but not less than 25 years."

In this case, defendant was charged with three counts of CSC-I: Count One alleged that defendant, who was over 17 years old, engaged in sexual penetration, penis to buttocks, with a child under 13 years old; Count Three alleged that defendant, who was over 17 years old, engaged in sexual penetration, finger to vaginal area, with a child under 13 years old; and Count Five alleged that defendant, who was over 17 years old, engaged in sexual penetration, penis to buttocks, with a child under 13 years old.

Before trial, both parties requested the trial court to instruct the jury on M Crim JI 20.1 and 20.3. The jury instruction for a defendant charged with CSC-I is M Crim JI 20.1. It requires the trial court to describe the nature of the alleged sexual penetration and to tell the jurors that any entry, however, slight is sufficient, and that it does not matter whether the sexual act was completed or semen was ejaculated. M Crim JI 20.1(2). The court must also instruct the jury regarding one or more of nine alternative ways that a defendant may commit a CSC-I. M Crim JI 20.1(3). In this case, the parties agreed that M Crim JI 20.3 was the relevant instruction and required the court to instruct the jury that the complainant "was less than thirteen years old at the time of the alleged act." M Crim JI 20.1(4) states that "*Where the defendant is charged under MCL 750.520b(2)(b) with the 25-year mandatory minimum for being 17 years of age or older and penetrating a child under 13 years old, instruct according to M Crim JI 20.30b*." In turn, M Crim JI 20.30b provides:

> (1) If you find that the defendant is guilty of first-degree criminal sexual conduct, then you must decide whether the prosecutor has proved each of the following elements beyond a reasonable doubt:
>
> (2) First, that [*name complainant*] was less than thirteen years old when the offense occurred, and,
>
> (3) Second, that the defendant was seventeen years of age or older when the offense occurred.

> In pertinent part, the trial court instructed the jury:

> In counts one, three and five, criminal sexual conduct in the first degree, the defendant is charged with the crime of first[-]degree criminal sexual conduct. To prove this charge the prosecutor must prove each of the following elements beyond a reasonable doubt: first, that the defendant engaged in an act that involved, for count one, penis into buttocks; count three, finger into vagina; count five, penis into buttocks. Any entry, no matter how slight, is enough. It does not matter whether the sexual act was semen was ejaculated.

Second, that the complainant was less than 13 years of age at the time of the alleged act.

And third, that the defendant was 17 years of age or older.

The court also provided the jury with written instructions, including:

### *Elements*

Count 1, 3, & 5: Criminal Sexual Conduct First Degree:

The defendant is charged with the crime of first-degree criminal sexual conduct. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt:

First, that the defendant engaged in a sexual act that involved:

> Count 1 – Penis into Buttocks.
>
> Count 3 – Finger into Vagina.
>
> Count 5 – Penis into Buttocks.

Any entry, no matter how slight, is enough. It does not matter whether the sexual act was completed or whether semen was ejaculated.

Second, that the complainant was less than thirteen years old at the time of the alleged act.

Third, that the defendant was 17 years of age or older.

Consistent with these instructions, the jury verdict form read:

We the Jury Find the Defendant:

As to Count 1: Criminal Sexual Conduct—First Degree—Defendant's Penis into the Victim's Buttocks—Victim less than 13 years of age and the defendant was 17 years of age or older:

( ) Not Guilty

( ) Guilty

As to Count 3: Criminal Sexual Conduct—First Degree—Defendant's Finger into the Victim's Vagina—Victim less than 13 years of age and the defendant was 17 years of age or older:

( ) Not Guilty

( ) Guilty

As to Count 5: Criminal Sexual Conduct—First Degree—Defendant's Penis into the Victim's Buttocks—Victim less than 13 years of age and the defendant was 17 years of age or older:

( ) Not Guilty

( ) Guilty

However, M Crim JI 3.32, the model verdict form for a defendant charged with a single count, reads:

Defendant: _____

[First-degree Criminal Sexual Conduct]

POSSIBLE VERDICTS:

You may return only one verdict on this charge. Mark only one verdict in this section.

_____ Not Guilty

_____ Guilty

ADDITIONAL SPECIAL FINDINGS:

If you found the defendant guilty of first-degree criminal sexual conduct, you must also decide whether or not the prosecutor proved beyond a reasonable doubt that [*name complainant*] was less than thirteen years old at the time of the offense, and that the defendant was seventeen years of age or older at the time of the offense. Consider each of these findings separately. Mark only one box for each numbered finding in this section. Your findings must be unanimous.

1. [*Name complainant*] was less than thirteen years old at the time of the offense.

_____ Not Proved beyond a reasonable doubt

_____ Proved beyond a reasonable doubt

2. The defendant was seventeen years of age or older at the time of the offense.

_____ Not Proved beyond a reasonable doubt

_____ Proved beyond a reasonable doubt

-12-

Defendant argues the jury instructions and verdict form failed to allow the jury the opportunity to find him guilty of CSC-I, MCL 750.520b(1)(a) (sexual penetration of a child under the age of 13) without subjecting him to a 25-year mandatory minimum sentence under MCL 750.520b(2)(b). We disagree. Defense counsel's failure to object to the verdict form on that basis was not objectively unreasonable. At trial, defendant did not dispute that the victim was born in January 2014, meaning that she was 7 or 8 years old when the sexual assaults occurred in 2021 or 2022. And, defendant did not dispute that he was born on March 1992, meaning that he was either 29 or 30 years old during the relevant timeframe. All of defendant's CSC-I charges were premised on defendant, an individual over 17 years old, sexually penetrating a minor under the age of 13. Further, had the verdict form included special findings regarding age, it would have been redundant and potentially confusing, twice requiring the jury to find that AW was under the age of 13 and emphasizing her status as a young child. Moreover, the verdict form required the jury to first find that the victim was under 13 and then find that defendant was over 17. Accordingly, defendant cannot demonstrate that he was prejudiced when the verdict form accurately instructed the jury on the charges against him.

Defendant further argues his counsel was ineffective for failing to object to the jury verdict form's use of the word "victim" when describing AW. Under MCL 750.520a(s), however, a "victim" is defined as "the person alleging to have been subjected to criminal sexual conduct." Therefore, it was not improper for the verdict form to refer to AW as a "victim" because she alleged defendant subjected her to criminal sexual conduct. See *People v Wisnieski*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 361978); slip op at 18 ("[U]nder Michigan law, it was appropriate for the prosecution to refer to the [CSC] complainants as 'the victim[s],' see MCL 750.520a(s)'. . . ."). Because the verdict form was proper, counsel's failure to object to it did not prejudice defendant and counsel was not ineffective.

## V. SENTENCING

Defendant argues he is entitled to resentencing because the trial court failed to articulate why his within-guidelines sentence was proportionate and reasonable. We disagree.

"[W]ithin-guidelines sentences are to be reviewed for reasonableness," and a "nonbinding rebuttable presumption of proportionality" is applied. *People v Posey*, 512 Mich 317, 359-360; 1 NW3d 101 (2023). "This Court reviews the proportionality of a trial court's sentence for an abuse of discretion. A given sentence constitutes an abuse of discretion if that sentence violates the principle of proportionality. . . ." *People v Lydic*, 335 Mich App 486, 500; 967 NW2d 847 (2021) (quotation marks and citations omitted).

"[S]entencing courts must justify the sentence imposed in order to facilitate appellate review." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "[W]ithin-guidelines sentences are to be reviewed for reasonableness, but . . . applying a presumption of proportionality . . . through which the defendant bears the burden of demonstrating that their within-guidelines sentence is unreasonable or disproportionate. . . ." *Posey*, 512 Mich at 359. "A presumption of proportionality does not mean that a within-guidelines sentence is binding on the Court of Appeals." *Id*. "When a trial court sentences a defendant within the guidelines' recommended range, it creates a presumption that the sentence is proportionate. However, unlike

a mandate that an appellate court affirms a within-guidelines sentence, the presumption of proportionality may be overcome." *Id*. at 360.

"Defendant bears the burden of overcoming the presumption" that his within-guidelines sentence is proportionate. *Posey*, 512 Mich at 357. "In order to overcome the presumption that the sentence is proportionate, a defendant must present unusual circumstances that would render the presumptively proportionate sentence disproportionate." *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013) (quotation marks and citation omitted). "Unusual" means "uncommon, not usual, rare." *People v Sharp*, 192 Mich App 501, 505; 481 NW2d 773 (1992) (cleaned up).

Defendant's sentencing guidelines provided for a minimum sentence of 171 months (14.25 years) to 570 months (47.5 years) in prison. Defendant was also subject to a 25-year mandatory minimum sentence under MCL 750.520b(2)(b). See *People v Roy*, 346 Mich App 244, 256; 12 NW3d 183 (2023) ("[A] person 17 years old or older who is convicted of a CSC-I offense against a victim or victims under the age of 13 who receives a term-of-years sentence must be sentenced to a minimum term of not less than 25-years."). The *Roy* panel also cited to *People v Gordon*, unpublished per curiam opinion of the Court of Appeals, issued July 23, 2019 (Docket No. 343352), for the proposition that "MCL 750.520b(2)(b) imposes a mandatory minimum 25-year sentence and an upward departure from the statutory minimum is reviewed for reasonableness." *Roy*, 346 Mich App at 251.[5]

Defendant was sentenced to 30 to 75 years' imprisonment, a within-guidelines sentence, five years above the 25-year mandatory minimum. Defendant asserts the trial court did not adequately justify the sentence imposed. We disagree.

At sentencing, AW's victim-impact statement was read. AW's guardians also provided written victim-impact statements. The prosecution requested a 30-year minimum sentence because of AW's young age, defendant's status as an authority figure, i.e., effectively AW's step-father, and defendant's failure to take responsibility for his actions.[6] Defense counsel asked the court to impose concurrent rather than consecutive sentences.

The court noted that it presided over the jury trial and had reviewed the PSIR. The court also recognized that a jury had convicted defendant of three counts of CSC against "a person under the age of 13, a person who was put into [defendant's] trust and care, and [defendant] took advantage of that[.]" The court further mentioned defendant's extensive criminal history, including four felonies, 11 misdemeanors, and juvenile offenses, adding that defendant had been on probation and parole previously. Moreover, defendant had a substance-abuse history and was not working, but he had some vocational training. The trial court remarked that rape is considered

---

[5] In *People v Payne*, 304 Mich App 667, 672; 850 NW2d 601 (2014), this Court held that "any upward departure from [the] 25-year mandatory minimum must be supported by substantial and compelling reasons." However, to the extent that *Payne* required substantial and compelling reasons for upward departure, it is no longer good law. See *Lockridge*, 498 Mich at 398-399.

[6] The probation department recommended a minimum 25-year sentence.

by some to be "worse than death" because the victim is forced to live with the consequences of the crime. The trial court discussed how the damaging impacts of sexual assault can be especially harmful for one as young as AW. The trial court stated the assaults were a "life sentence" for AW because as she "grows and goes through puberty and then goes on to hopefully get married or whatever else, and raise a family, all those things are gonna be triggers and potentially bring her back to what [defendant] did to her." The trial court added:

> But then what's the sanction for you? There's a mandatory, which I think is at least spot on, if not more because of the age of [AW] and [defendant's] age."

It is unclear whether the trial court determined that a higher sentence was warranted due to defendant's and AW's ages or whether the court was explaining that MCL 750.520b(2)(b) required a 25-year mandatory minimum sentence be given because of their ages. If the former, the trial court's reasoning was adequate for us to review defendant's sentence. If the latter, defendant failed to overcome the presumption of proportionality in light of his sentencing guidelines and the additional factors the sentencing court highlighted. See *Posey*, 512 Mich at 357. Defendant has not presented "unusual circumstances that would render the presumptively proportionate sentence disproportionate." *Bowling*, 299 Mich App at 558 (quotation marks and citations omitted). Stated otherwise, the trial court did not abuse its discretion in sentencing defendant to 30 to 75 years' imprisonment.

Affirmed.

/s/ Mark T. Boonstra
/s/ Anica Letica
/s/ Michelle M. Rick